Cheshire, Nov. 6, 1940. } No. 3187.

FRED L. PHINNEY

*v.*

CHESHIRE COUNTY SAVINGS BANK & a.

*Thorp & Branch* and *Robert D. Branch* (*Mr. Robert D. Branch* orally), for the plaintiff.

*Orville E. Cain,* for the defendant Cheshire County Savings Bank.

*Roy M. Pickard,* for the defendant Carver.

WOODBURY, J. On October 2, 1925, one Barnes gave his note in the sum of $7,879.04 to Adella M. Black of Keene and secured the same by a mortgage on certain real property in Hinsdale. Two years later, on October 1, 1927, Mrs. Black gave her note in the sum of $9,500 to the defendant bank and secured the same by a mortgage on two parcels of real property in Keene, a mortgage on a parcel of real property in Chesterfield, and an assignment of the Barnes note and mortgage. On March 11, 1929, Mrs. Black died, and soon thereafter the defendant Carver was appointed executor of her estate. By this time the equity of redemption in the Barnes property in Hinsdale had come by *mesne* conveyances to one Haines.

On August 13, 1929, Haines conveyed his equity of redemption in this Hinsdale property to Carver as executor by a quitclaim deed which recited that it was given to avoid the necessity of foreclosing the Barnes mortgage and contained a stipulation to the effect that in the event the property should be sold by Carver for a sum in ex-

cess of the amount of that mortgage, with interest and taxes, such excess should be paid over to Haines, the grantor. On November 21, 1930, the Probate Court, on Carver's petition, granted him a license to sell this Hinsdale property and on December 2 of that year he sold it to Helen E. Taylor for six thousand dollars; $1,000 of which was paid in cash and the balance of $5,000 was secured by a mortgage. The payment of $1,000 in cash was turned over to the bank and applied by it on the Black note. The mortgage of Taylor to Carver was, on December 11, 1930, assigned by the latter to the bank and the bank discharged the original mortgage of Barnes to Black which it held as assignee of Black.

With respect to this last transaction the court below transferred the question whether "The Bank should have credited the estate with payment on the Black note of the amount of $6,000 instead of $1,000 as of December 11, 1930, the date when the Bank received from the executor the assignment of the Taylor note and mortgage and discharged the original mortgage from Emery Barnes to Adella Black?"

When Barnes mortgaged the Hinsdale property to Mrs. Black in 1925 she acquired legal title thereto as security for her loan to Barnes of $7,879.04. Later, when Mrs. Black assigned her note from Barnes and her interest as mortgagee of this Hinsdale property to the bank to secure in part the bank's loan to her of $9,500, the bank acquired "in equity the rights of the mortgagee." *Laconia Savings Bank* v. *Vittum*, 71 N. H. 465, 467. After this transaction Barnes' indebtedness was to the bank and his property was pledged to it as security therefor. The mortgage on his property ceased to be an available asset of Mrs. Black and became an available asset of the bank. Mrs. Black's only right was to have the Barnes note and mortgage reassigned by the bank to her in the event that she should pay her debt to the bank before Barnes paid his debt to it. This was the situation when Mrs. Black died and Carver assumed his duties as executor of her estate.

Then, default having occurred on the Barnes mortgage, the latter's successor in interest, Haines, conveyed his equity of redemption in the mortgaged property to Carver as executor. This transaction did not extinguish the mortgage title by merger because, the original mortgagee having parted with her title as such and never having regained it, there was no union of estates. *Lime Rock National Bank* v. *Mowry*, 66 N. H. 598, 600. Neither did it affect the bank's right as mortgagee. Its only effect was to place Carver as

executor in the position of owner of the equity of redemption but, since it does not appear that he assumed and agreed to pay the mortgage debt, it did not place him in the position of a mortgagor. *Lawrence* v. *Towle*, 59 N. H. 28, 30, and cases cited.

The plaintiff makes no complaint of any of the transactions thus far analyzed. He complains only of those which will be considered in detail hereafter, that is, of the transactions between Carver, Mrs. Taylor and the bank.

When Carver as executor sold his equity of redemption in the Hinsdale property, under license from the Probate Court, to Mrs. Taylor he turned over the part of the purchase price which he received in cash ($1,000), to the bank which credited that amount on the debt of the Black estate to it. The mortgage of $5,000, which Mrs. Taylor gave to Carver to secure the balance of the purchase price, Carver assigned to the bank and it discharged the original mortgage on this property given by Barnes to Black and assigned by the latter to it so that the Taylor mortgage became a first one.

With respect to these transactions the plaintiff contends that Carver, as an executor, had no right to sell real estate belonging to him in that capacity for anything but cash and cash alone, and that the bank in dealing with him, "was, as a matter of law, charged with knowledge of his duties and the limitations of his authority." From this he argues that the mortgage of Taylor to Carver was invalid as to both Carver and the bank, and so nothing was either given or received in exchange for the latter's discharge of the Barnes mortgage. As a result of this he suggests, to quote from his brief, first "that the bank is chargeable with the value of the Barnes mortgage as of the date the bank discharged it" and second that "in equity, the sale to Mrs. Taylor should be treated as a foreclosure sale by the bank, and the indebtedness of the Black estate credited as of December 11, 1930, with the sale price of $6,000 since, as a result of that sale, the bank discharged the Barnes mortgage."

No authorities in point are cited by the plaintiff in support of either of his alternative propositions. With respect to the first one, extended analysis is unnecessary because we are unable to discern any way in which the plaintiff suffered loss by the bank's discharge of the Barnes mortgage. As appears above, this mortgage, after its assignment to the bank by Mrs. Black, the mortgagee named therein, became the property of the bank. If, even without consideration, the bank chose to discharge it and so to give up whatever rights it might have either to foreclose the mortgage or to proceed personally against

the mortgagor, or those of his grantees, mediate and immediate, who may have assumed and agreed to pay his obligation, we cannot see how the assignor or those claiming under her may complain. The most that the bank did in discharging the Barnes mortgage was to surrender part of its security for the Black debt. The only right of those claiming under Mrs. Black, after her assignment to the bank, was to have the Barnes note and mortgage reassigned to them if the indebtedness of the Black estate to the bank should be paid before the indebtedness of Barnes to the bank should be liquidated. Until their debt to the bank was paid their right to reassignment was inchoate. In the case at bar the event necessary to convert their inchoate right into a vested one did not occur and now it never can occur because the bank finally satisfied its claim against the Black estate by foreclosure on the Keene and Chesterfield property mortgaged to it by Mrs. Black as well as by foreclosure of the Taylor mortgage on the Hinsdale property as will appear hereafter. Whether or not there may be cases in which the circumstances require that an assignor's right to reassignment while still inchoate be protected in equity we need not now decide.

The plaintiff's second proposition, which assumes the validity of the Taylor mortgage, is without merit. We are unable to understand how a sale by the owner of an equity of redemption in mortgaged property can, in equity or anywhere else, be regarded as a sale of the property on foreclosure by the mortgagee. If the Taylor mortgage was valid the transactions under consideration only rearranged the security for the indebtedness of the Black estate to the bank; they did not increase or prolong that indebtedness. Under these circumstances we cannot see how a residuary legatee of the Black estate may complain. The first question asked is answered in the negative.

The next question asked relates to transactions which took place after Mrs. Taylor bought the property. She made two payments to the bank on her mortgage, each of $500, and then sold the property to a buyer who was unable to procure fire insurance on the premises and who defaulted on the mortgage debt. In December 1933 the bank foreclosed this Taylor mortgage and conveyed the premises by mortgagee's deed on December 29, 1933, to one Whitcomb, an employee of the bank, for a recited consideration of $4,556.82, this being the amount of principal, interest, taxes, insurance and expenses of foreclosure then due. Whitcomb, however, was a straw man who in fact paid nothing for the property and as a result of this transaction the bank credited nothing on the indebted-

ness of the Black estate. After this foreclosure sale the bank paid taxes and insurance premiums on the property and continued to charge the Black estate with interest on the full amount of its indebtedness. On August 19, 1935, the bank sold, and on its orders Whitcomb conveyed, part of the property for $2,000, and the bank, after deducting interest and the expenses it had incurred in holding the property, including taxes and insurance, credited the balance on the Black note. On February 5, 1937, the rest of the property was sold in the same way for $2,130, and the proceeds were similarly allocated.

The court below inquires if "the Bank should have credited the estate with payment on the Black note of $4,105, [this being the amount of principal and interest then due on the Taylor note and mortgage] as of December 29, 1933, the date when the Bank conveyed the property to Whitcomb by reason of the foreclosure sale?" This question is answered in the affirmative. For over one hundred years it has been the rule "that foreclosure of a mortgage operates as payment of the debt to the value of the mortgaged property," (*Hunt* v. *Stiles*, 10 N. H. 466, 468), "at the moment of foreclosure," (*Smith* v. *Packard*, 19 N. H. 575, 578), and "The question of value and of the amount of the payment affected by it is purely one of fact." *McKeen* v. *Cook*, 73 N. H. 410, 411, and cases cited. In the case of foreclosure under power of sale the same principle applies, but "It has been repeatedly held that a purchaser at a foreclosure sale enters into a binding contract which cannot be modified or annulled except under such circumstances as would justify its reformation or rescission within the technical meaning of those terms. 3 Jones, Mortgages (8th *ed.*), 601, and cases cited. Nor is the rule otherwise where the mortgagee is himself the purchaser." *Roberge* v. *Cyr*, 84 N. H. 204, 205. Thus a mortgagee who purchases the mortgaged property at his own foreclosure sale is obligated to credit the mortgagor with the value of the property foreclosed, unless he bids for it more than it is worth, in which event he is obligated to credit the mortgagor with the net amount of his bid. The mortgagee may only be relieved of this latter obligation when circumstances exist which entitle him to reformation or rescission of the contract of purchase which he entered into when he bid in the mortgaged property.

In the case at bar the bank foreclosed the Taylor mortgage pursuant to an agreement with Carver concerning which the court below, quoting the testimony of the attorney for the bank, made the

following findings: "The attorneys for the Bank and the executor agreed that the mortgage should be foreclosed and conveyed to Mr. Whitcomb as trustee for the Bank and the estate, provided no one else bid in the property at the foreclosure sale for an amount sufficient to pay the mortgage indebtedness. The Bank and the executor believed that they would have plenty of chances to sell it for $5,000 or $6,000 at that time and this method . . . was a method of getting a good title to the property . . . . We had the auction hoping to sell it for something over the mortgage . . . or at least as much . . . but it couldn't be sold . . . . It was arranged by Mr. Pickard, the attorney for Carver, and myself (Mr. Cain, attorney for the bank) that the Hinsdale property should be foreclosed in order that we might be in a position to convey it whenever we could get a purchaser. Title was taken in the name of Paul E. Whitcomb, an employee of the Bank because the Bank did not wish to give credit until it received payment. The arrangement was, the Bank should hold title and sell and credit whatever might be received from the sale of the homestead and the tenement house in Hinsdale on the indebtedness due."

This agreement between Carver and the bank was invalid. The reason for this is that it was either one obligating the executor on behalf of his estate to enter into a business venture with the bank and thus created "a liability not founded upon the contract or obligation of the [testator]," (*Thomson* v. *Smith*, 64 N. H. 412) or else it was one in the nature of a compromise of a claim against the estate which, to be valid, must have the consent of the Probate Court (P. L., c. 302, s. 27), and no such consent was ever obtained.

It does not follow from this, however, that no equitable rights resulted from the transactions entered into on the basis of this invalid agreement. The foreclosure sale may not be set aside because of the equitable rights of the persons who, in good faith and on the basis of a clear record title, eventually bought the property from Whitcomb. Also, if the property had been sold by the bank at a profit, the executor, not the bank, would in equity on the basis of unjust enrichment be entitled to that profit. Similarly, the invalid agreement did not destroy the bank's right to reformation or rescission of its bid if the facts disclose that it is entitled to such relief.

There was no mutual mistake here as to the situation, amount, character or condition of the property. The only mistake was as to its value, and that could not be determined, as it can for some other kinds of property, by reference to market records or reports on some

particular date or by some simple mathematical computation. Its value depended upon business judgment; upon a prophecy respecting future business conditions. Its value was purely a matter of opinion and, as events transpired, the opinion of both parties was erroneous. The mistake was that both Carver and the bank were in error in thinking that they would have "plenty of chances" to sell the property for $5,000 or $6,000. We know of no rule of law which permits the reformation or rescission of a contract of purchase and sale on the ground that both the buyer and seller entertained an erroneous belief that future profits would accrue to them as a result of their transaction. It follows that the bank has no right to have its bid reformed or rescinded and that the estate is entitled to be credited with the net amount of the bank's bid for the property at the foreclosure sale.

By taking title in the name of a straw man, as the bank had the right to do if it chose, the bank sought not only to postpone the date of payment to the time when it should sell the property and at that time to credit the indebtedness with its then value, but it sought also to charge the debtor in the meantime with interest on the full amount of his debt and in addition with the expenses incident to holding the property. This it cannot be allowed to do.

The bank could have refrained from foreclosure and either done nothing or pursued its other available remedies for the collection of the debt due it. Having chosen to foreclose its mortgage, thereby cutting off the mortgagor's right to redeem as well as his rights to manage or to attempt to liquidate the property, it may not, by the method adopted or by any other, avoid the operation of the rule announced above. If a mortgagee, after default, elects to take the mortgaged property by foreclosure, fairness requires that he assume the burdens of ownership. To sanction the technique adopted would be to permit a mortgagee to take from his mortgagor all but the onus of ownership. This is obviously unfair. The bank should credit the indebtedness of the Black estate as of the date of its foreclosure of the Hinsdale property with the net amount of its bid for that property. The expenses incurred by the bank in holding this property after that date are its expenses and not those of anyone else. Interest on the debt of the Black estate must, of course, be adjusted accordingly.

Carver, however, was a residuary legatee as well as an executor. As executor he consented to the agreement with the bank with full knowledge of its terms. This estops him from benefiting as residu-

ary legatee from the setting aside of the agreement which he entered into in his fiduciary capacity, and in an accounting his rights must be determined accordingly.

*Case discharged.*

BRANCH, J., did not sit: the others concurred.