## KALES v. UNITED STATES.

### No. 8341.

Circuit Court of Appeals, Sixth Circuit.

Nov. 9, 1940.

Kendall H. Shoyer, of Philadelphia, Pa., for appellant.

Alexander N. Rubin, of Philadelphia, Pa., for appellees.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

498

Laurence A. Masselink and Hal H. Smith, both of Detroit, Mich. (Beaumont, Smith & Harris, of Detroit, Mich., on the brief), for appellant.

Milford S. Zimmerman, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key, Norman D. Keller, Milford S. Zimmerman, and George Taylor, Sp. Assts. to Atty. Gen., and John C. Lehr and J. Thomas Smith, both of Detroit, Mich., on the brief), for appellee.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

Appellant's action to recover income taxes alleged to have been overpaid for the calendar year 1919 was dismissed, from which order she prosecutes this appeal. The facts out of which the controversy arises are undisputed and substantially as follows:

Prior to March 1, 1913, appellant was the owner of 535 shares of Ford Motor Company stock. Its majority stockholder made an offer to purchase the stock of the minority and on or about May 19, 1919, the Commissioner of Internal Revenue, at the request of the stockholders, determined the March 1, 1913, value of each share to be $9,489.34. Thereafter on July 7, 1919, appellant sold her stock for $12,-

500 per share and on March 25, 1920, filed her income tax return for the calendar year 1919 and reported the profit on the sale in accordance with the Commissioner's determination of March 1, 1913, value, showing taxes due in the amount of $1,216,086.26, which she paid to the Collector of Internal Revenue in quarterly installments.

In March, 1925, the Commissioner of Internal Revenue, on audit and review of her return, redetermined the March 1, 1913, value of the stock to be $2,634 per share and accordingly made a jeopardy deficiency assessment against her of $2,627,309.05, all of which she paid to the Collector of Internal Revenue under protest, at which time she addressed and mailed a letter to him and sent a copy to the Commissioner, the first eight paragraphs of which stated grounds of protest against the payment of the assessment. Paragraphs 9 and 10 related to an overpayment on her original return and are material to the question here.[1]

On April 6, 1925, the Commissioner advised the appellant that his office was in receipt of her protest against the assessment of the deficiency in taxes as levied against her for the year 1919 in the amount of $2,627,309.05, but in view of the fact that the statutory time for collection was about to expire, an immediate assessment was imperative and she could file a claim of abatement with the Collector in ten days, which would be given prompt consideration. On June 4, 1925, appellant filed with the Commissioner a claim for refund for the $2,627,309.05 additional assessment, which was rejected, and she sued and recovered that amount against the Collector to whom it had been paid. Woodworth v. Kales, 6 Cir., 26 F.2d 178.

On May 5, 1928, the Board of Tax Appeals, in the case of Couzens (another stockholder of the Ford Motor Company), 11 B.T.A. 1040, fixed the March 1, 1913, value of the Ford stock at $10,000 per share and on September 24, 1928, appellant filed with the Commissioner, on a form provided by him, what she designated "amendment to claim for refund filed March 24, 1925," in which she adopted the findings

---

[1] "9. This taxpayer further advises you and the Commissioner of Internal Revenue and the United States Government, that, while it is her position that the deficiency assessment is so illegal and void, as is set forth in paragraphs 1 to 8 above, and is likewise illegal and void and contrary to law for other reasons, that if it should be held either by the Internal Revenue Department, on the hearing of a claim for refund or otherwise, or by the Board of Appeals, or by any other Board or body having jurisdiction thereof to which this controversy should be submitted, or by any court of competent jurisdiction thereof, that the former assessment as made by Commissioner Daniel C. Roper should be set aside and vacated, and that the March 1, 1913, value of the said Ford Motor Company stock as fixed by Daniel C. Roper, Commissioner of Internal Revenue, and his finding and determination as to same shall be vacated, set aside, reopened or reversed, and the contentions of this taxpayer as heretofore set forth be overruled then this taxpayer will show and claim and insist that the valuation of $9,489.34 on each share of Ford Motor Company stock fixed by the said Daniel C. Roper, Commissioner of Internal Revenue, is substantially less than the fair value of said stock on the basic date, and that the said stock was greatly undervalued by the Commissioner and that the fair value of said stock per share as of March 1st, 1913 was greatly in excess of $9,489.34, and that therefore this taxpayer should recover from the Collector of Internal Revenue, to whom said tax on said transaction was paid, or from the Government of the United States, such portion of the tax heretofore paid on said transaction as may be found to have been excessive when the fair value of said stock as of March 1, 1913, shall have been determined and the tax on the basis thereof shall have been recomputed.

"10. Protestant, while insisting for the reasons among others above stated, that the valuation of said stock as of March 1, 1913, made by the Department as aforesaid and approved by the Secretary of the Treasury should stand, yet if for any reason a re-valuation shall be had protestant will insist that said stock as valued by the Department as aforesaid, was grossly undervalued and that she was required to and did pay an excessive tax upon an alleged excessive profit arising from said sale, and she will claim the right to a refund of said tax to the extent of such excess. Considering the laches of the Department and the fraud (actual or constructive) perpetrated upon protestant, she will also claim that the running of the statute of limitations against her right to said refund is postponed until a reasonable time after any such revaluation."

500

of the Board of Tax Appeals as to the March 1, 1913, value of the stock as found in the Couzens case, which showed an overpayment of taxes on her original return of $195,710.44. This claim was retained in the Commissioner's office and thereafter several conferences were had with the General Counsel's office in the Bureau with relation to it. On August 20, 1935, the Commissioner advised the appellant that the records of the Bureau indicated that she had filed a judgment claim dated September 2, 1928, in the sum of $2,627,309.05 based upon the decision in the District Court of Michigan, affirmed by this court on May 10, 1928, and that she had also filed September 21, 1928, a form purporting to be an amendment to a claim for refund filed March 24, 1925, seeking a further refund of $195,710.44. He advised that the refund claim filed in 1925 was merged into the judgment secured and that she was therefore precluded from filing an amendment to the earlier claim, which had been finally adjudicated, and since the so-called amendment was not treated as a claim, there was no necessity for a disallowance.

Appellant instituted this action July 7, 1936, and on motion of appellee, it was dismissed on the ground that her claim was barred by the Statute of Limitations; hence this appeal.

Two issues are presented: (1) Whether appellant's letter of March 24, 1925, to the Collector of Internal Revenue constituted an informal claim for refund, and (2) If such letter constituted such claim, whether it was rejected by the letter of the Commissioner of Internal Revenue dated April 6, 1925.

R.S. § 3226, as amended, U.S.C.A. Title 26, Internal Revenue Code, § 3772, provides no suit or proceeding shall be maintained in any court for the recovery of any Internal Revenue tax until a claim for refund has been duly filed with the Commissioner of Internal Revenue in accordance with the law and regulations.

R.S. § 3228, as amended, U.S.C.A. Title 26, Internal Revenue Code, § 3313, provides that no refund shall be allowed unless before the expiration of a period of four years from the time the tax was paid a claim therefor has been filed by the taxpayer. Section 284(h) of the Revenue Act of 1926, 44 Stat. 9, 26 U.S.C.A. Int.Rev.Acts, page 223, extends the time for the filing of claim for refund for 1919 taxes to five years from the date the return was due. Treasury Regulations 65, Article 1306, promulgated under the Revenue Act of 1934 and applicable here, provides that claims by the taxpayer for the refunding of taxes shall be made on form 843 and all facts relied on under the claim should be clearly set forth under oath. Treasury Decision 4266, promulgated March 27, 1929, authorizes the Commissioner to make a refund after the expiration of the statutory period of limitation, even if no formal claim has been filed prior thereto, in any case in which an informal or defective claim duly filed prior to the expiration of the period of limitation and stating specifically the grounds for the refund, is perfected by the filing of a claim prior to May 1, 1929.

■ It is settled law that where a claim rejectable as too general and as omitting to specify matters needing investigation has not misled the Commissioner, but has been the basis of an investigation disclosing facts necessary to his action in making a refund, an amendment which merely makes more definite the matters already within his knowledge, is permissible. United States v. Andrews, 302 U.S. 517, 524, 58 S.Ct. 315, 82 L.Ed. 398.

■ In the administration of Internal Revenue Laws, we are concerned with substance and not form. The prerequisite refunding statutes requiring claim for refund before suit, should receive a practical construction to effectuate their purpose. The income tax law is complex and does not always permit a determination of the taxpayer's liability in the first instance. Inevitable mistakes occur. Statutory provision is made for the adjustment of the tax where understated by the taxpayer and as a corollary a statutory method is provided to relieve a taxpayer from overstatements. It is vital to the functions of government that taxes be collected promptly and if errors in returns are made that they be expeditiously corrected. To this end the statute requires the taxpayer to make a timely charge of overpayment with grounds therefor, that the government may make investigation and refund the amount due, if any, without being subjected to the delay and expense of litigation and any timely claim showing intention to ask a refund of taxes allegedly overpaid and the grounds therefor is sufficient to answer that purpose.

■ In considering the sufficiency of the claim, proper consideration should be given to its spirit and purpose and the surrounding facts and circumstances in the light of the statute. Applying this rule to the case at bar, appellant stated in her letter that she protested the assessment of the deficiency and was paying it under duress and solely to prevent the imposition of penalties and threatened attachment of her property.

■ The first eight paragraphs of her letter recited the fact that in making her original return she had accepted the Commissioner's March 1, 1913, value of the Ford stock in good faith and relied on it in making the sale and for that reason the United States was estopped from reopening, reversing or setting aside the previous determination of the value of the stock by the Commissioner.

In appellant's action for the recovery of the deficiency assessment, she relied on three grounds, (1) estoppel in her favor against the later attempted revaluation, (2) that the assessment made by the Commissioner for 1919 based upon this valuation and its later approval by his office, established that value beyond the power to reopen and reconsider except for a good cause which was non-existent, and (3) that the deficiency of 1925 which had required the disputed payment, was void for lack of jurisdictional basis, and she was sustained by this court on the second ground. Woodworth v. Kales, supra. That action was against the Collector of Internal Revenue to whom she had paid the deficiency and as the original tax which she now seeks to recover was paid to another Collector, she could not have litigated in her former action the issue she now raises. Smietanka v. Indiana Steel Company, 257 U.S. 1, 42 S.Ct. 1, 66 L.Ed. 99; Routzahn v. Reeves Bros. Company, 6 Cir., 59 F.2d 915.

Paragraphs 9 and 10 of the letter were alternatives to paragraphs 1 to and including 8. In substance, appellant stated that if the Internal Revenue Bureau, the Board of Tax Appeals or any court having jurisdiction of the subject matter, should decide that the United States was authorized to change the valuation fixed by the Commissioner of Internal Revenue before she sold her stock, then she had the right, and would show, that the valuation so fixed was substantially less than the fair market value of the stock March 1, 1913, and that she was entitled to recover such portion of the tax as was originally paid by her due to the undervaluing of the stock.

■ Appellant's letter was more than a protest or a statement of an intention to file a claim later in the event certain contingencies should arise. It was clear notice to the Commissioner that if he reversed his decision as to the value of the stock she was claiming a refund of that part of the original tax paid by her, because of his March 1, 1913, undervaluation of the stock. Her statement was in the nature of a counterclaim. The claim she urges here did not mature until the March 1, 1913, value of the stock as previously determined by the Commissioner was changed by his office, the Board of Tax Appeals or some court of competent jurisdiction. A taxpayer may state as many grounds for refund as he wishes regardless of consistency, provided facts are disclosed on which the Commissioner may act. Compare Reynolds v. McMurray, 10 Cir., 77 F.2d 740; Ferguson v. United States, Ct.Cl., 2 F.Supp. 1012.

■ There is a class of claims for refundment of taxes in which, through no fault of his own and often through the fault of the Commissioner, the taxpayer does not know which of two or more inconsistent grounds he may succeed in proving, either of which will entitle him to refundment. In such cases, the taxpayer cannot allege facts without qualification but may state them in the alternative so that the Commissioner, in considering his grounds, will not be left in the dark as to the facts on which the taxpayer relies, but within limits, which would exclude abuses, the right of the taxpayer to set up alternative grounds for refundment is clearly recognized. The analogy is found in General Rules of Pleading. Rule 8(e) of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; United States v. Richards, 6 Cir., 79 F.2d 797.

The appellant's claim falls clearly within the above classification. She was willing to let the Commissioner's former determination of the March 1, 1913, value of the stock stand, but if he proposed to re-examine and withdraw his former decision, she proposed, in the alternative, to show facts which would be to her advantage. The Commissioner re-examined the whole subject matter and in so doing was required to redetermine the March, 1913,

value of the stock as though it had not theretofore been done.

 We are of the opinion that appellant's letter of March 24, 1925, constituted an informal claim, which the Commissioner did not reject for failure to comply with the Treasury Regulations and when considered in the light of all the facts and circumstances existing at the time, the formal refund claim filed by appellant September 11, 1928, and accepted and considered on its merits by the Commissioner, was but a perfection of the informal claim and not a new and independent one. Night Hawk Leasing Company v. United States, 18 F.Supp. 938, 84 Ct.Cl. 596; Lasher v. United States, 65 Ct.Cl. 295; In re Baltimore Pearl Hominy Company, 4 Cir., 5 F.2d 553; United States v. Factors & Finance Company, 288 U.S. 89, 94, 53 S. Ct. 287, 77 L.Ed. 633. Compare Georgia, Florida & Alabama Railway Company v. Blish Company, 241 U.S. 190, 198, 36 S.Ct. 541, 60 L.Ed. 948.

The case of Waters v. United States, D.C., 12 F.Supp. 658, 659, relied on by appellee is not applicable here. There the Commissioner assessed the tax deficiency; the taxpayer wrote a letter of protest without paying the tax in which it was stated: "I intend to file claims for refund immediately for these additional taxes." The tax not having been paid at the time the letter was written, it could not be characterized as a claim for refund. In the case at bar all the taxes had been paid at the time the letter was written and no reference in it could be construed fairly as applying to unpaid taxes.

Appellee's contention that the Commissioner's letter of April 6, 1925, constituted a rejection of appellant's informal claim is without merit. This communication, when fairly construed, relates exclusively to the additional assessment referred to in the first eight paragraphs of her letter. The Commissioner advised appellant that, under the provisions of Section 279(a) of the Revenue Act of 1924, 26 U.S.C.A. Int.Rev.Acts, page 61, she could file a claim for abatement within ten days. A claim in abatement is applicable only to taxes which have been assessed and not yet paid. Construing the letter in the light of the Statute, it is clear that the Commissioner's office labored under the misapprehension appellant had not paid the deficiency assessment. The letter made no reference either directly or indirectly to paragraphs 9 and 10 of appellant's communication of March 24, 1925, which related entirely to taxes voluntarily paid on her original return.

The Internal Revenue Bureau accepted appellant's amendment to her informal claim and considered it on its merits and finally rejected it on a ground abandoned in this action and we are of the opinion that her cause of action was not barred by any applicable statute of limitation.

Judgment reversed for proceedings consistent with this opinion.