Ruth Jane ATTIX, Executrix of the Estate of Fred F. Attix, Deceased, Plaintiff,

v.

Thomas M. ROBINSON, Defendant.

Civ. No. 61.

United States District Court
D. Montana,
Billings Division.

Oct. 24, 1957.

Felt, Felt & Burnett, Billings, Mont., for plaintiff.

Charles K. Rice, Asst. Atty. Gen., James P. Garland, David A. Wilson, Jr., Department of Justice, Washington, D. C., Krest Cyr, U. S. Atty. for District of Montana, Butte, Mont., and Dale F. Galles, Asst. U. S. Atty., Billings, Mont., for defendant.

JAMESON, District Judge.

This is an action for recovery of federal estate taxes paid by Ruth Jane Attix, executrix of the estate of Fred F. Attix, deceased, to the District Director of Internal Revenue for the District of Montana. The facts, which have been stipulated, may be summarized as follows:

The decedent, Fred F. Attix, executed his last will and testament November 7, 1947. He died on February 9, 1948, and his will was duly admitted to probate in the District Court of Fergus County, Montana. The plaintiff is the executrix of the estate and widow of decedent.

Under the will of decedent a bequest was made to a sister, and the remainder of the estate was bequeathed and devised to Ruth Jane Attix, as trustee "in trust for the said Ruth Jane Attix and the beneficiaries of said trust estate who shall take same at her death." Pertinent provisions of the will are:

"I will, order and direct that said trustee, at her discretion may sell and dispose of all property as such trustee, excepting the Attix Clinic, which is to be held intact, she being entitled to the net income therefrom after paying expenses and maintaining the same in its present condition unless the same fails to pay expenses and must be operated at a loss, then she may sell the same. All of said estate to be invested and reinvested in good, sound securities and direct her to secure proper advice for said purposes from the Union Bank and Trust Company, Trust Department, at Helena, Montana.

"During the lifetime of my said wife, I order and direct said trustee to pay and deliver to her the net annual income from said trust estate, the same to be paid to my said wife in monthly or other convenient installments.

"It is my will and purpose, however, that my said wife shall live comfortable during her lifetime, and to have whatever is reasonably necessary by way of medical, nursing and hospital attention, and, if it shall happen at any time or from time to time that the net annual income from said trust estate is not sufficient during any one year to enable my said wife to live comfortably and to have whatever is reasonably necessary by way of medical, nursing and hospital attention, then I will, and order and

direct the Court having jurisdiction of the probate of this will, upon proper application being made, to order paid to my said wife out of the principal of said trust estate whatever is necessary to enable her to live comfortable and at the same time to provide her with reasonable necessary medical, nursing, and hospital attention, and if any such application be made, I desire the court to be fairly liberal in making any such added allowance."

The will then provides that upon the death of Ruth Jane Attix, the residue of the estate shall be divided beween two adult and married daughters. Under the will the widow was not required to give bond as either trustee or executrix.

The plaintiff filed with defendant a timely estate tax return on or about May 10, 1949, and paid the sum of $17,142.42, the estate tax shown to be due by the return. On or about January 9, 1952, the plaintiff paid a deficiency of $3,403.-64, plus $527.56 interest. In computing the estate tax, no marital deduction was claimed or allowed in respect to any part of the property constituting the corpus of the testamentary trust created by decedent's will.

On November 2, 1953, plaintiff filed a timely claim for refund of $18,256.94, reciting therein that: "Claimant believes that this estate qualifies for the marital deduction by reason of the Modification of Code Sec. 812(e) by Sec. 210, Technical Changes Act of 1953 [26 U.S.C.A. (I. R.C.1939) § 812 note], which provides for the marital deduction in certain cases where decedent died before April 3, 1948—date of death February 9, 1948." Attached were computations of the estate tax and marital deduction from which it appears that all of the property in the testamentary trust was included in the refund claim. The claim was signed by Ruth Jane Attix, and following her signature was typed "Ruth Jane Attix, Executrix." On or about August 24, 1955, the plaintiff duly filed with the defendant an alleged amendment to the refund claim, which was signed by Ruth Jane

Attix, and following her signature there was typed "Ruth Jane Attix, surviving spouse and executrix."

The Commissioner of Internal Revenue disallowed the refund claim and alleged amendment on February 10, 1956. Complaint was filed within two years from receipt of the disallowance.

Two questions are presented:

(1) Does the testamentary trust created under the will of decedent qualify for a marital deduction under Section 812(e) of the Internal Revenue Code of 1939, as modified by Section 210 of the Technical Changes Act of 1953?

(2) Did the widow of decedent file a timely and sufficient election pursuant to Section 210(b) of the Technical Changes Act of 1953?

Sec. 812 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 812, relating to net estate, provides in part:

"For the purpose of the tax the value of the net estate shall be determined in the case of a citizen or resident of the United States by deducting from the value of the gross estate * * *

"(e) (as added by Sec. 361(a), Revenue Act of 1948, c. 168, 62 Stat. 117) *Bequests, etc., to surviving spouse.—*

"(1) *Allowance of marital deduction*

"(A) In general. An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

"(B) Life estate or other terminable interest. Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

"(i) if an interest in such property passes or has passed (for less than

an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

"(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse."

Pertinent provisions of the Technical Changes Act of 1953, c. 512, 67 Stat. 624, include:

"Sec. 210. Marital Deduction in Certain Cases Where Decedent Died Before April 3, 1948.

"(a) *In General.*—In the case of an interest in property passing by will from the decedent, if the surviving spouse is entitled for life to all the income from such property, payable annually or at more frequent intervals, with power in the surviving spouse to use and consume such portion of the property as the surviving spouse may need or desire for her (or his) comfortable support and maintenance, and with no power in any person other than the surviving spouse to appoint any part of such property, then—

"(1) the interest so passing shall, for the purposes of subparagraph (A) of section 812(e) (1) of the Internal Revenue Code, be considered as passing to the surviving spouse. * * *

"(2) no part of the interest so passing shall, for the purposes of subparagraph (B) (i) of section 812 (e) (1) of the Internal Revenue Code, be considered as passing to any person other than the surviving spouse.

"Nothing in this subsection shall be construed to permit the same items to be twice deducted.

"(b) *Election.*—The provisions of subsection (a) shall apply only if the surviving spouse files an election under this section with the Secretary within one year after the date of the enactment of this Act under such regulations as the Secretary shall prescribe. * * *

"(d) *Effective Date.*—This section shall apply only with respect to estates of decedents dying after December 31, 1947, and on or before the date of the enactment of the Revenue Act of 1948. * * * "

Treasury Regulation 105, promulgated under the Internal Revenue Code of 1939, contain the following provisions:

"Sec. 81.47a(h). *Certain interests passing by will from decedents dying after December 31, 1947, and on or before April 2, 1948*—

"(1) *In general.* Under the provisions of section 210 of the Technical Changes Act of 1953, property interests (whether or not in trust) which passed by will from decedents dying after December 31, 1947, and on or before April 2, 1948, shall, if the following conditions are met, be considered for the purposes of section 812(e) (1) (A) as having passed from the decedent to the surviving spouse and will not be considered for the purposes of section 812 (e) (1) (B) as having passed from the decedent to any person other than the surviving spouse:

"(i) The surviving spouse must be entitled for life to all the income from the property;

"(ii) Such income must be payable annually or at more frequent intervals;

"(iii) The surviving spouse must have the power to use and consume such portion of the property as she (or he) may need or desire for her (or his) comfort, support, and maintenance (or a broader power to use and consume);

"(iv) The property must not be subject to a power in any other person to appoint any part thereof to any person other than the surviving spouse; and

"(v) The surviving spouse must file an irrevocable election in the manner prescribed in subparagraph (2) of this paragraph.

\* \* \* \* \* \*

"(2) *Election*—(i) *in general.* The provisions of subparagraph (1) of this paragraph shall apply only if the surviving spouse files an election in accordance with the following requirements: The election shall be in the form of a written statement, in duplicate, addressed to the district director in whose office the decedent's estate tax return was filed, and signed by the surviving spouse. It shall state the name of the decedent, the name and address of the surviving spouse, and shall contain a statement that such spouse elects to have the provisions of section 210 of the Technical Changes Act of 1953 apply. The statement shall specify and describe the property or interests included in the decedent's estate tax return to which the provisions of this paragraph are applicable. Such election must be placed in the mail at such a time that it would normally be received by the district director on or before August 15, 1954."

These regulations were adopted on August 2, 1954 and published in the Federal Register on August 5, 1954. It appears from defendant's brief that proposed regulations were published on December 29, 1953 and that the final regulations were unchanged from the proposed regulations.

It is conceded that the corpus of the testamentary trust does not qualify as a marital deduction under Section 812(e) of the Internal Revenue Code of 1939, as amended by the Revenue Act of 1948, supra. Does it qualify under Section 210 (a) of the Technical Changes Act of 1953, supra? It is the contention of the defendant that decedent's will fails to meet the requirements that there be "power in the surviving spouse to use and consume such portion of the property as the surviving spouse may need or desire for her (or his) comfortable support

and maintenance \* \* \*". Apparently there is no contention that the will does not meet the other requirements of the Act and regulations issued pursuant thereto. It is clear also that Section 210 applies both to property in a testamentary trust in which the widow has a life income interest and to property not left in trust in which the widow has a life estate. See Treasury Regulation 105, Sec. 81.47a(h), supra.

■■ The parties agree that Section 210 of the Technical Changes Act of 1953 is a remedial statute. It is the general rule that relief or remedial provisions must be liberally construed to effectuate the objective sought. Mertens Law of Federal Income Taxation, Vol. I, par. 3.09, and cases there cited. This rule has been applied to refund provisions. Bonwit Teller & Co. v. United States, 283 U. S. 258, 51 S.Ct. 395, 75 L.Ed. 1018; Kales v. United States, 6 Cir., 1940, 115 F.2d 497.

■ It is the duty of the Court to look to the language employed and the legislative history and "to construe the language so as to give effect to the intent of Congress". United States v. American Trucking Associations, 1940, 310 U.S. 534, 542–545, 60 S.Ct. 1059, 1063, 84 L. Ed. 1345; Northwestern Mutual Fire Association v. Commissioner of Internal Revenue, 1950, 9 Cir., 181 F.2d 133. In United States v. American Trucking Associations, supra, the court said in part:

"There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purposes of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy

of the legislation as a whole' this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination'. * * *"

See also Mertens Law of Federal Income Taxation, Vol. I, par. 3.26 and cases there cited.

The purpose of the statute here under consideration may best be determined from the Congressional Committee Reports on Section 210 of the Technical Changes Act of 1953. It was explained in the House Report (1953–2 Cumulative Bulletin):

"The attention of your committee has been called to certain situations where a decedent died after December 31, 1947, but prior to the date of the enactment of the Revenue Act of 1948, which allowed a marital deduction for estate tax purposes. Consequently, while the act applied to such cases, estates of decedents dying within this short period from January 1, 1948, to the date of its enactment on April 2, 1948, were unable to secure the benefit of its provisions in some cases because the will of the decedent was not in accord with certain technical requirements of the act. If the decedent had been alive after the enactment of the Revenue Act of 1948, his will would undoubtedly have been rewritten to conform to the provisions of the act. * * * Cases have been called to the attention of your committee where the power granted to the surviving spouse was not in trust and was confined to a power in the surviving spouse to use and consume such portion of the property as the surviving spouse may need or desire for her (or his) comfortable support or maintenance. It is the opinion of your committee that in the case of a decedent dying after December 31, 1947, and prior to April 3, 1948, a power of this broad application should be considered as sufficient to permit the marital deduction of property subject to such power and the bill so provides." (p. 514)

■■ From this it may be seen the Act was remedial in nature, and intended to apply to wills which were already in existence which contained a power of the "broad application" described, but not in accord with the technical requirements of the act. It was designed to provide relief for the estates of decedents dying "within this short period" from January 1, 1948, to April 2, 1948 (the date of enactment of the 1948 Revenue Act), Congress specifically recognizing that "if the decedent had been alive after the enactment * * * his will would undoubtedly have been rewritten to conform to the provisions of the act". The act should be liberally construed to give effect to the intent of Congress as evidenced by the committee reports. Is the power contained in the will sufficiently broad, under a liberal construction of the act, to meet the requirement of "power in the surviving spouse to use and consume such portion of the property as the surviving spouse may need or desire for her (or his) comfortable support and maintenance?"

Decedent expresses his "will and purpose" that his wife shall "live comfortable" and have whatever is reasonably necessary by way of medical, nursing and hospital attention. If the income is insufficient for these purposes, then "I will, order and direct" the court, upon proper application, "to order paid to my said wife out of the principal * * * whatever is necessary to enable her to live comfortable and to * * * provide her with reasonable necessary medical, nursing and hospital attention", and " * * * I desire the court to be fairly liberal in making any such added allowance."

Defendant argues (1) that the will gives the widow only the power to apply to the court for an invasion of the corpus and authorizes the court to make the invasion in such manner as it may de-

sire; and (2) that in order to obtain permission of the court the widow would be required to show a "need", whereas to qualify under the statute, the widow must have the power to consume such portion of the corpus as she may "need or desire".

■ Under the Montana law, where any trust has been created by will, the court does not lose jurisdiction by final distribution of the estate, but retains jurisdiction for the purpose of settlement of accounts under the trust. The trustee is required to render proper accounts, with citation to all beneficiaries of the trust to show cause why the account should not be allowed. The trustee may be compelled to make an accounting upon the application of any beneficiary under the trust. Sec. 91–4201, Revised Codes of Montana, 1947. The court has control of discretionary powers vested in a trustee, if not reasonably exercised. Sec. 86–509, R.C.M.1947. It has exclusive jurisdiction to determine whether the purpose of a testamentary trust has been accomplished. Philbrick v. American Bank & Trust Co., 58 Mont. 376, 193 P. 59.

Presumably counsel for the decedent had in mind these provisions of the Montana law in drafting the will. Regardless of the particular provisions of the will, the probate court would have continuing jurisdiction of the trust. The will does not provide for discretion in the court, but rather "wills, orders and directs" the court to make the payments to the wife and expresses the desire that the court be "fairly liberal in making any such added allowance."

■ Counsel for defendant stress the words "need or desire", but in their argument by-pass the qualifying words "for her comfortable support and maintenance." True, the word "desire" in itself would imply that the power to invade the corpus must be at the sole discretion of the spouse as her whim and fancy might dictate. If such a meaning had been intended by Congress, there would have been no need for the relief provision. Where the widow has an unlimited and unrestricted right to use and consume the corpus, it is not necessary to resort to the remedial legislation. The language used in the act suggests the possibility that a particular will may have been in the minds of the draftsmen, but in any event the use of the qualifying words negatives any intent that the will must permit an invasion of the corpus at the whim of the widow. Although the "need or desire" of a life tenant has been held not limited to a prior mode of life or any other fixed and ascertainable standard under which the value of a charitable remainder may be determined, Newton Trust Co. v. Commissioner of Internal Revenue, 1 Cir., 1947, 160 F.2d 175, 179, and cases there cited; and "desire" of a life tenant not to preclude an invasion of the principal at the whim of the life tenant, Gammons v. Hassett, 1 Cir., 1941, 121 F.2d 229, its use in the present relief provision is modified by the words "for her comfortable support and maintenance".

In Estate of Wallace S. Howell, 1957, 28 T.C. ——, the Tax Court recently had under consideration a will in which the decedent left all of his property to his widow "to be used as she pleases, for her own support," the remainder upon her death to go to a son or grandson. The court held that no marital deduction was allowable under paragraph B of Section 812(e) (1), supra, for the reason that there was a possibility that the wife's estate would be terminated and some or all of the property go to another, the court also calling attention to the fact that the surviving spouse was "limited to a power to consume for support". It is of course conceded that the will in question would not qualify for the marital deduction under Section 812(e) (1) (B); nor would any will contemplated by Section 210 of the Technical Changes Act of 1953. In determining whether a will does qualify under Section 210, however, full effect must be given to the qualifying words "for comfortable support and maintenance." In this respect the provision of the Act is not essentially different from the provision in decedent's will. In addition, the words "need" and "desire", as

modified by "comfortable support and maintenance", are used in the alternative and not conjunctively. Obviously the statute was intended to cover a broad number of situations where the power of the life tenant to invade the principal was something less than an absolute right.

The intent of the decedent to give broad powers of invasion to his surviving spouse is strengthened by the fact that he named her as sole trustee and specifically provided she should serve without bond. The grant of such a power implies more where the widow is both beneficiary and sole trustee than where a separate trustee is donee. See Reed v. Reed, 1908, 80 Conn. 401, 68 A. 849; Hartford-Connecticut Trust Co. v. Eaton, 2 Cir., 1929, 36 F.2d 710.

Under a literal interpretation of the word "desire", by itself, the will in question would not qualify for the marital deduction, but considering the qualifying clause and general purpose of the remedial legislation, it is my opinion that the literal interpretation is "at variance with the policy of the legislation as a whole" (United States v. American Trucking Associations, supra), and that the will is sufficiently broad to qualify under the Act. I cannot escape the conclusion that under all the circumstances here presented, "if the decedent had been alive after the enactment of the Revenue Act of 1948, his will would undoubtedly have been rewritten to conform to the provisions of the Act." House Committee Report, supra.

The trustee (who is also the widow) is ordered and directed at her discretion to sell and dispose of all property "excepting the Attix Clinic, which is to be held intact * * * unless the same fails to pay expenses and must be operated at a loss, then she may sell the same." The defendant argues that by reason of this provision "a substantial part of the corpus is placed entirely beyond the widow's reach, except under stated circumstances" and that as long as the clinic is not operated as a loss, "then there is a sub-stantial part of the corpus that is beyond any power of invasion". This provision of the will relates to the power of the *trustee* to sell the property. Section 210 (a) of the Technical Changes Act of 1953 relates to the power of the *surviving spouse* to use and consume the property for her comfortable support and maintenance. Upon proper application to the court, the widow's power of invasion would include the Attix Clinic property, if necessary for her to live comfortably and have whatever is reasonably necessary by way of medical, nursing and hospital attention.

Was there a sufficient compliance with the election provision of Section 210(b) and the regulations issued pursuant thereto? The act itself required that the surviving spouse file an election within one year "under such regulations as the Secretary shall prescribe." The regulations (adopted August 2, 1954, published in the Federal Register August 5, 1954, proposed regulations in the same form having been published December 29, 1953) provide that the election shall be in the form of a written statement, addressed to the District Director, and signed by the surviving spouse; that the election shall contain the name of the decedent, name and address of the surviving spouse, a statement that the surviving spouse elects to have the power of Section 210 of the Technical Changes Act of 1953 apply, and shall specify and describe the property or interest; and that such election must be placed in the mail so that it would normally be received by the District Director on or before August 15, 1954.

The accountant who prepared the return for the estate did not subscribe to the Federal Register but was a subscriber to a publication of Commerce Clearing House, in which the regulations were published on August 12. This publication was received in Lewistown, Montana, on August 14, 1954. The regulations required an election to be filed in Helena, Montana, on August 15th. Counsel for plaintiff argue that under these circum-

stances a strict compliance with the regulations was impossible.

■ The primary question, however, is whether the refund claim filed on November 2, 1953, may properly be construed as an election by the widow under Section 210(b) of the Technical Changes Act of 1953. Manifestly, it was a written statement, filed in duplicate with the District Director, and was signed by the widow in her capacity as executrix. It does not specify and describe the property, although it could reasonably be inferred from the computations that all the property in the testamentary trust was included in computing the marital deduction. The estate tax return and copy of will theretofore filed showed clearly that the widow was the same person as the executrix, and the return contained a description of the property. As noted above, the refund claim was signed by Ruth Jane Attix, and following her signature was typed "Ruth Jane Attix, Executrix." It is the contention of the defendant that this would not constitute an election by the widow and that regardless of who signed the claim for refund, it could not affect the rights of the surviving spouse.

"In the administration of Internal Revenue laws, we are concerned with substance and not form." Kales v. United States, supra [115 F.2d 500]. The claim for refund setting forth specifically the basis of the claim could be effective only upon election of the widow. In the absence of an election by the widow, there would be no reason to file the claim. The defendant was not misled or deceived by the failure of the widow to comply more strictly with Section 210(b). See Bonwit Teller & Co. v. United States, supra.

The widow would be estopped to deny an election under these circumstances. While an act done in a representative capacity will not ordinarily estop one in his individual capacity, an exception is made where "his acts as a representative and as an individual are so closely connected and associated that it is impossible to distinguish the actions in one capacity from the other." See 33 C.J.S. Executors and Administrators § 150, p. 1111. Thomasson v. Walker, 1937, 168 Va. 247, 190 S.E. 309, 110 A.L.R. 593; In re Bunker's Estate, 1944, 183 Misc. 523, 49 N.Y.S.2d 619; Edmondson v. Boyd, 196 Ark. 954, 120 S.W.2d 561; Phinney v. Cheshire County Savings Bank, 91 N.H. 184, 16 A.2d 363. In my opinion, upon the death of Ruth Jane Attix, her estate would be bound by the election made in the refund claim which was signed as executrix.

I see no reason why the same rule should not apply where the widow relies upon an act which she herself performed in a representative capacity and which was predicated upon an election which as widow she alone could make. Certainly the acts in a representative and individual capacity were so closely connected and associated that it is impossible to distinguish the acts in one capacity from the other.

The executrix of the estate was notified on July 12, 1955, that requirements of Section 210(b) had not been complied with. On August 24, 1955, an "amendment" was filed, complying strictly with the Regulations and signed Ruth Jane Attix. After her signature there was typed "Ruth Jane Attix, Surviving Spouse and Executrix."

Although not concerned with an election of a surviving spouse, but rather with a claim for refund of an alleged overpayment of income tax, observations of the Court of Claims in Factors' & Finance Co. v. United States, 1932, 56 F.2d 902, 73 Ct.Cl. 707, regarding the construction of remedial statutes are pertinent here. The court there considered a claim which had been filed within the time provided by statute, but which did not contain all the facts required by the regulations. An "amendment" supplying the facts was filed after the time for filing claims had expired. The court said in part: " * * * By the amendment filed, before the commissioner had acted, the commissioner was fully advised as to the grounds and the facts relied upon.

He was not misled. * * * In Tucker v. Alexander, * * * (275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253) the court said: 'The statute and the regulations must be read in the light of their purpose. They are devised, not as traps for the unwary, but for the convenience of government officials in passing upon claims for refund and in preparing for trial. Failure to observe them does not necessarily preclude recovery.' Statutes must have a reasonable construction, and the language must be interpreted with reference to the subject-matter and the general course of business to which they relate, and in such manner that the beneficent provisions of remedial laws may not be thwarted by nice technicalities not within the minds of the legislators. Lynch v. Alworth-Stephens Co., 267 U.S. 364, 370, 45 S.Ct. 274, 69 L.Ed. 660; Old Colony R. Co. v. Commissioner of Internal Revenue, 284 U.S. 552, 52 S.Ct. 211, 76 L.Ed. 484." 56 F.2d at pages 907–908.

In this case, by the refund claim filed on November 2, 1953, the Commissioner was advised fully that Section 210 of the Technical Changes Act of 1953 was relied upon as establishing the right to refund. The document set forth the nature of the claim and manner in which the refund was computed. While it was signed by Ruth Jane Attix in her representative capacity, she was the identical person who had to make the election as a widow. The Commissioner was not misled. Before final action the amendment supplied any defects in the original election.

It is accordingly my conclusion (1) that the testamentary trust created under the will of decedent qualifies for a marital deduction under Section 812(e) of the Internal Revenue Code of 1939, as modified by Sec. 210 of the Technical Changes Act of 1953; and (2) that the widow of decedent filed a timely and sufficient election pursuant to Sec. 210(b) of the Act. Counsel for the respective parties are requested to submit computations of the amount of overpayment to be entered as a judgment for plaintiff.