# 14365

No. 14365

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

STATE ex rel., FLORENCE-CARLTON SCHOOL
DISTRICT No. 15-6,

                    Petitioner and Appellant,

    -vs-

BOARD OF COUNTY COMMISSIONERS OF RAVALLI
COUNTY AND RAVALLI COUNTY PLANNING BOARD,

                    Respondents,

    and

EDGAR L. PRICE, et al.,

                    Intervenors and Respondents.

---

Appeal from:  District Court of the Fourth Judicial District,
            Honorable Jack L. Green, Judge presiding.

Counsel of Record:

    For Appellant:

        Milodragovich, Dale and Dye, Missoula, Montana
        Harold Dye argued, Missoula, Montana

    For Respondent:

        Douglas G. Harkin, County Attorney, argued, Hamilton, Montana
        Datsopoulos and MacDonald, Missoula, Montana
        Dennis Lind argued, Missoula, Montana

    For Amicus Curiae:

        Hon. Mike Greely, Attorney General, Helena, Montana
        Mike McCarter argued, Assistant Attorney General, Helena, Montana

---

Submitted:  September 19, 1978

Decided:  DEC 5 - 1978

Filed:  DEC 5 - 1978

_Thomas J. Kearney_
                  Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an appeal from an order of the Fourth Judicial District Court vacating an alternative writ of prohibition and mandate directed against the Board of County Commissioners of Ravalli County and the Ravalli County Planning Board. The writ directed the respondent Boards to make written findings of fact concerning whether certain proposed subdivisions within Ravalli County were in the public interest within the meaning of section 11-3866(4), R.C.M. 1947. The District Court permitted the owners (developers) of the proposed subdivisions to intervene. On their motion it vacated the writ and ruled that section 11-3866(4) does not apply to the subdivisions at issue and that respondent Board of County Commissioners need not make findings that the proposed subdivisions are in the public interest.

In June, 1977, Wilbur Hensler obtained a survey of a portion of his ranch in Ravalli County, dividing the land into 71 parcels of just over 20 acres each. Hidden Valley Ranches, a partnership of Missoula businessmen, then purchased a number of these parcels and subsequently resold them to individual buyers. At the time of the sale by Hidden Valley Ranches, these tracts were subject to restrictive covenants which prevented them from being subdivided into parcels smaller than five acres each. The individual owners then submitted plats for the approval of 26 separate subdivisions each consisting of less than five lots.

The original division of the Hensler Ranch into tracts exceeding 20 acres was exempt from review under the Subdivision and Platting Act, sections 11-3859 through 3876, R.C.M. 1947. Section 11-3861(12) defining "subdivision" excludes tracts containing 20 or more acres. The Act further provides

that subdivision plats which contain five or fewer parcels to be sold may be eligible for "summary" review under sections 11-3866(6) and 11-3863(5) rather than the more comprehensive review procedures required of subdivisions which contain more than five lots.

All the parties to this action agree that the proposed subdivisions are "minor" subdivisions--that is, that they contain five or fewer lots. Appellant School District, however, contends they do not qualify for summary review under section 11-3866(6). Further, if they should qualify for such review, appellant contends the statute required respondent Board of County Commissioners to make written findings to determine if the subdivisions are in the public interest. Respondents argue that the subdivisions qualify for summary review and that such review does not require the county commissioners to make written findings to evaluate whether the subdivisions are in the public interest.

The issues presented to this Court for review are:

1. Must a "minor" subdivision which qualifies for review under section 11-3866(6), R.C.M. 1947, meet the "public interest" requirements of section 11-3866(4), R.C.M. 1947?

2. Does a "minor" subdivision, whose only access to lots consists of private easements, qualify for summary review under section 11-3866(6), R.C.M. 1947?

The Subdivision and Platting Act, first enacted in 1973 (Ch. 500, Laws of Montana (1973)), is a technical statute which attempts to provide the proper amount of public control over subdivision development necessary to ensure certain public protection purposes. In its short lifetime, the Act has been amended several times, including amendments to

its purpose section (section 11-3860) and to its provisions for review (section 11-3866).

There are two procedures for review of proposed subdivisions by local governing bodies. Subdivisions which are not eligible for summary review under section 11-3866(6) must be reviewed according to the procedures outlined in section 11-3866(1)-(5). Only those subdivisions with five or fewer lots, which have "proper access" to all lots and in which no land is to be dedicated for parks or playgrounds may qualify for summary review under subsection (6). In subsection (4), the governing body is directed to determine whether a proposed subdivision is "in the public interest". If it finds that it is not, the governing body is bound to disapprove the proposal. Section 11-3866(4), R.C.M. 1947. The subsection also lists eight specific criteria which the governing body must weigh in arriving at its decision of whether the subdivision is in the public interest:

"(a) the basis of the need for the subdivision;
(b) expressed public opinion;
(c) effects on agriculture;
(d) effects on local services;
(e) effects on taxation;
(f) effects on the natural environment;
(g) effects on wildlife and wildlife habitat, and
(h) effects on the public health and safety."

Appellant School District argues that all subdivisions must be demonstrably in the public interest under the criteria listed in section 11-3866(4) before a governing body may give its approval, including those proposed subdivisions which qualify for summary review under section 11-3866(6).

Of particular importance to the issue raised by this appeal are the amendments to the purpose section. As originally enacted, the purpose section made no mention of written findings of public interest. A 1975 amendment to that

section added that one of the purposes of the Act was "to require that approval of any subdivision be contingent upon a written finding of public interest by the governing body". Ch. 498, Section 1, Laws of Montana (1975). In the same chapter the legislature also enacted an amendment to section 11-3866. That amendment added a new subsection (4) which provides that the governing body must weigh the eight specified criteria listed above to arrive at a written finding of whether a proposed subdivision is in the public interest. If it finds that it is not in the public interest, the governing body must disapprove the subdivision. Ch. 498, Section 3, Laws of Montana (1975) codified at section 11-3866(4), R.C.M. 1947.

The 1977 legislature further amended the purpose section (11-3860), section 11-3862, and section 11-3866. The purpose section was amended by qualifying the public interest clause with the words "whenever necessary", adding "appropriate" before "approval" and deleting "any" from in front of "subdivision". It now reads "to require whenever necessary, the appropriate approval of subdivisions be contingent upon a written finding of public interest by the governing body". Ch. 552, Section 1, Laws of Montana (1977).

In the same chapter the legislature also created a specific modification of the written public interest finding requirement for certain subdivisions within previously adopted county master plans. The amendment added subsection (8) to section 11-3862, to provide that a subdivision which is within a county's master development plan is "deemed to be in the public interest and exempt from the requirement of an environmental assessment." Ch. 552, Section 2, Laws of Montana (1977) (codified at section 11-3862(8), R.C.M. 1947).

In a separate chapter the 1977 session laws provide for an amendment adding subsection (6) to section 11-3866. Ch. 555, Sec. 1, Laws of Montana (1977). That subsection outlines specific review procedures for subdivisions with less than five parcels which have proper access to all lots and which do not contain land to be dedicated for public recreation. It does not say specifically whether such proposed "minor" subdivisions are subject to the public interest requirement which was added in 1975. This particular question is still new to this Court, as the recent decision of Young v. Stillwater County Commissioners (1978), _____ Mont. ____, 582 P.2d 353, 355, 35 St.Rep. 1099, 1102, specifically declined to rule on the issue.

It is notable that the purpose section has twice been amended since the original passage of the Act. The first amendment, in 1975, added the public interest requirement to "any subdivision". The 1977 amendment, as noted above, qualified that language by adding "whenever necessary" and "appropriate" while deleting "any". The purpose of the 1977 amendments apparently is to make the purpose section consistent with the amendment to section 11-3862 which was contained in the same bill. As discussed above, the amendment to section 11-3862 added subsection (8) modifying the requirement of a written public interest finding by deeming certain proposed subdivisions to be in the public interest. Thus, in those instances where a subdivision is within a county's master plan, the written public interest finding mandated in section 11-3866(4) is not necessary because the subdivision is presumed to be in the public interest.

However, the provision for review of minor subdivisions in section 11-3866(6) makes no parallel presumption. The

provision in section 11-3862(8) does <u>not</u> <u>exempt</u> certain subdivisions from the public interest criteria--it merely presumes that subdivisions which come within its scope are already in the public interest. The interpretation urged by respondent commissioners and developers is that because the written public interest finding is not mentioned in section 11-3866(6), the legislature must have intended to create an exception for minor subdivisions requiring no public interest determination at all, presumed or written.

In view of the purpose section of the Act, requiring written findings of public interest "whenever necessary" and the fact that section 11-3862(8) does not <u>except</u> subdivisions within master plans from the public interest requirement but rather <u>deems</u> them to be in the public interest, the argument that an exception is created by the legislature's silence on the public interest requirement in section 11-3866(6) is difficult to accept. This is particularly so upon considera- tion of the general principles of statutory construction applicable to a statute such as the Subdivision and Platting Act. The purpose section declared that the Act is intended to provide for the public health, safety, and general welfare:

> "It is the purpose of this act to promote the public health, safety, and general welfare by regulating the subdivision of land; to prevent overcrowding of land; to lessen congestion in the streets and highways; to provide for ade- quate light, air, water supply, sewage dis- posal, parks and recreation areas, ingress and egress, and other public requirements; to re- quire development in harmony with the natural environment; to require that whenever neces- sary, the appropriate approval of subdivi- sions be contingent upon a written finding of public interest by the governing body . . ." Section 11-3860, R.C.M. 1947.

Legislation enacted for the promotion of public health, safety, and general welfare, is entitled to "liberal construc-

tion with a view towards the accomplishment of its highly beneficent objectives". 3 Sutherland, Statutory Construction, §71.01 (4th Ed., 1974). As one court has stated:

> "No rule of statutory construction is more readily applied by the courts than that public statutes dealing with the welfare of the whole people are to have a liberal construction." Hall v. Union Light, Heat & Power (E.D. Ky. 1944), 53 F.Supp. 817, 818-19.

See also Chesapeake and Potomac Telephone Co. v. Public Service Commission (D.C. App. 1977), 378 A.2d 1085, 1089; Ranquist v. Stackler (1977), 13 Ill.Dec. 171, 370 N.E.2d 1198, 1203; New York State Board of Pharmacy v. Certain Adulterated and Misbranded Drugs (1977), 393 N.Y.S.2d 447, 448, 57 A.D.2d 569.

Accordingly, "exemptions, provisos, and exceptions are generally given a narrow interpretation." 3 Sutherland, Statutory Construction, supra, at §71.01, n. 3. In the Subdivision and Platting Act the general rule is that a subdivision must be found to be in the public interest before a governing body may approve it. This requirement is intended to fulfill the Act's objective of ensuring that the public health, safety and general welfare are protected. That objective must be the primary guide to the interpretation of the statute. Thus, where no specific exception to the public interest requirement is mentioned in section 11-3866(6), the better conclusion is that no such exception is intended.

This conclusion is buttressed by the 1977 legislature's addition of the word "appropriate" to the purpose section: "to require that whenever necessary, the _appropriate_ approval of subdivisions be contingent upon a written finding of public interest by the governing body". (Emphasis added.) The amendment adding "whenever necessary", as discussed

above, most naturally applies to the amendment to section 11-3862, providing that certain subdivisions are deemed to be in the public interest, because both amendments were part of the same bill. The word "appropriate" modifying "approval" suggests that aside from those instances in which a written finding of public interest is not required, the Act still provides for more than one form of approval. The Act does provide for two types of approval procedures, independent of the review of subdivisions which are deemed to be in the public interest. These are full or "formal" approval procedures requiring a public hearing and environmental assessment and the "summary" approval procedures outlined in section 11-3866(6). The most natural meaning of the clause in the purpose section is that the "appropriate" form of approval, whether that be formal approval or summary approval, is "contingent upon a written finding of public interest by the governing body."

We hold therefore that the public interest finding mandated by section 11-3866(4) applies to "minor" subdivisions which qualify for review under section 11-3866(6).

In its second issue, appellant School District contends that the subdivisions do not qualify for summary review under section 11-3866(6) because the only access to the individual lots is by private easement. This, it argues, does not meet the statutory requirement of "proper access to all lots".

This matter would be of concern in this appeal but the record indicates that the question has been rendered moot. The exceptions to section 11-3866(4) which are created by section 11-3866(6)(c) are the deletion of the public hearing and environmental assessment requirement. In this case,

however, public hearings were held on January 24 and February 2, 1978, before the Ravalli County Plat Committee and the Ravalli County Planning Board respectively. The Montana Department of Health and Environmental Sciences has also prepared a full environmental assessment of the proposed subdivisions. In view of these actions and this Court's holding on the public interest finding issue, it is clear a ruling on whether the proposed subdivisions qualify for summary approval under section 11-3866 would be of no avail. All the actions required for approval of major subdivisions, except for the public interest finding, have already been taken. Accordingly, we decline to rule on appellant's second issue.

The judgment of the District Court is reversed, and the Board of County Commissioners of Ravalli County is hereby directed to make written findings in accordance with section 11-3866(4), R.C.M. 1947, to determine whether these proposed subdivisions are in the public interest.

_____
                    Justice

We Concur:

_____
         Chief Justice

_____

_____
         Justices

_____
Honorable Gordon R. Bennett,
District Judge, sitting in place
of Mr. Justice Daniel J. Shea