HIGHLANDS INSURANCE COMPANY,
Plaintiff-Appellee,

v.

AMERICAN MARINE CORPORATION,
Louisiana Materials Co., Inc., and Sea
Drilling Corporation, Defendants-Appellants.

No. 77–1577.

United States Court of Appeals,
Fifth Circuit.

Dec. 5, 1979.

Rehearing Denied Jan. 18, 1980.

Neal D. Hobson, Joseph W. Looney, New Orleans, La., for defendants-appellants.

A. R. Christovich, Sr., A. R. Christovich, Jr., New Orleans, La., for plaintiff-appellee.

Before TUTTLE, GOLDBERG and RANDALL, Circuit Judges.

TUTTLE, Circuit Judge:

This is an appeal by American Marine Corporation and its two wholly-owned subsidiaries, Louisiana Materials Company, Inc. and Sea Drilling Corporation, from a judgment against them in favor of the original plaintiff, Highlands Insurance Company. The judgment was based upon final audits by the insurer of the payrolls of the insured company's Workman's Compensation policies using a premium basis of $100 per week for 52 weeks of employment for each of the employees. The defendants contended that the audit was wrong in several respects: (1) That a 26 week basis should have been used because the offshore employees were em-

ployed to work "seven on—seven off;" (2) That certain listed employees were executives and not properly included in the schedule for offshore workers; (3) As to those workers who were scheduled as "onshore" workers, the policies were invalid as to them because the retrospective rating plan in effect as to the offshore policies, which purported to apply also to the onshore policies, were invalid because the plan was not filed with the Louisiana Insurance Commission.

■ The record discloses that some time prior to the issuance of this policy, offshore workers had worked 10 days on and five days off. At that time, it was the custom in the industry for insurance premiums to be calculated on the basis of every week during which an employee performed any services. This would, of course, cover every week of total employment, because the ten day period would extend into parts of two weeks. Sea Drilling Corporation had initially insured with Highlands beginning in 1966. It entered into a three year program beginning in 1969, while American Marine and Louisiana Materials were insured through other companies until January and February of 1971. The policies issued to American Marine and Louisiana Materials included an endorsement which adopted by reference the retrospective rating program attached to the Sea Drilling policy.

When Highlands discovered that Sea Drilling had been reporting its seven on—seven off employees on a 26 week basis for 1969, it demanded a change from Sea Drilling, and as a result a meeting was had in May of 1970. Highlands contends that this meeting resolved the issue between the parties by an agreement by Sea Drilling that the basis for premium computation would be 52 weeks per year for 1969 and subsequent years. It is not necessary for us, however, to determine whether this meeting actually produced a final agreement, because the company's agent wrote a letter to Sea Drilling within a few weeks which we find did resolve this issue in favor of the insurance carrier as a basis for Sea Drilling's continuing to insure with Highlands for the future. This letter follows:

I have received an answer to my letter of July 2, 1970 to Mr. Dan Jones of the Highlands Insurance Company.

Letter reads in part as follows:

"We are threfore [sic] willing to continue coverage on the following basis:

1. The payroll for 1969 be $814,000.

2. The rates to be $16. (s) and $5.50 and $8.00 (e) as broken by the increase in limits.

3. The rates for the 1970 year be $16. (s) and $8.00 (e).

4. That the final audits for 1969 be released on the basis of payroll and rates as indicated above and prompt payment established.

5. The basis of the exposure—payroll for the year 1969 be continued as the basis of our normal method of calculation of the average weekly limitation.

6. That the difference in the years prior to 1969 rather than adjusting the rates or payrolls for the period of time in question be resolved to a settlement basis whereby Sea Drilling would pay two-thirds of the final amount over maximum with adjustments, both debits and credits, being made on an annual basis until all reserves are closed.

As all of us are aware this matter has been drawn out over an extended period of time and since all of the thought and study has gone into it we must insist we have an answer either negatively or affirmatively no later than Tuesday of next week. If affirmatively, we will release the final audits, retro adjustments and necessary endorsements. If negatively, we will have no alternative but to release notice of cancellation of all existing policies and seek final settlement through legal processes."

I would appreciate receiving your answer at your earliest convenience.

Two days following the receipt of this letter, Sea Drilling accepted its terms by a telephone conversation. The significant feature of this letter, as dealing with the

seven on—seven off question is the paragraph numbered 1. The dispute that was the subject of the May meeting was over the correctness of the insurance company's contention that the payroll of 1969 was $814,000 rather than half that amount. As already indicated, the insurer's claim was based on the contention that the payroll would represent minimum $100 per week for 52 weeks, as against the insured's claim that the amount should be based on 27 weeks. Thus, the agreement by the parties that "the payroll for 1969 be $814,000" fully supports the finding by the trial court that "the $814,000 payroll figure was *exactly* twice that reported by defendant's using a 26 week basis." Thus, the provision of paragraph 5 in the letter stating "payroll for the year 1969 be continued as the basis of our normal method of calculation of the average weekly limitation" was an agreement that the 52 week base for 1969 would be the standard for future operations.

Moreover, it is clear from the record that Sea Drilling Corporation immediately recognized the 52 week standard for reporting, and accepted a return premium for approximately $60,000 in 1971, a figure that was arrived at by using the 52 week basis.

The appellants' contention that the July 10 letter quoted above does not include a preliminary paragraph in the letter received by Hardin & Ferguson, Inc. from the Highlands Insurance Company, and that this failure made the numbered paragraphs either inoperative or ambiguous is without merit. The omitted paragraph merely contained Highlands' explanation as to why it was insisting upon the terms that were enumerated in the July 10 letter. Since these terms are readily understandable, it is unimportant that the insurance agency did not also include the entire Highlands letter.

The second issue raised by the appellants is that the premiums charged Sea Drilling, Inc. included the higher rate for drilling personnel as to three persons who were claimed by the insureds to be shore based supervisory or executive persons. The amount involved here is quite small, and the trial court noted that the insureds' trial brief did not discuss it. The court stated:

There was virtually no evidence to support the contention. Defendant's trial brief did not discuss it and their post-trial memorandum cites only the testimony of a Sea Drilling tool pusher to the effect that to his knowledge supervisors visited the rigs three and four times a year. There was no evidence of which supervisors these were or which supervisors were or were not classified improperly.

This was insufficient to support defendant's claim for a credit based on a reclassification of unspecified personnel.

■ The defendants contend that the trial court erred in placing the burden upon them in their effort to challenge the "classification" of these three executives, citing *Royal Indemnity Co., Inc. v. Shreveport Macaroni Co.*, 11 La.App. 628, 124 So. 595 (1929). The cited case simply does not support the defendants' contention. In that case, the insurance company had instituted an action to recover judgment against an insured for an alleged balance due for premiums computed much as are those in the case before us. The court said:

The audit made was not filed in evidence, and there is not any proof in the record that either the audit or classification based thereon was correct, and while the officers of the *defendant* testify that they had submitted a statement of the amount of payroll and classification thereon, and had made payments in accordance therewith, it is not shown that the payroll was correct or that the classification was in accord with the schedule under which the classification should have been made, and the schedule of classification was not offered in evidence. [Emphasis added.]

Upon this statement the court held that the trial court should have dismissed the claim "as of nonsuit." The case is silent as to the burden of proof in which an insured either makes out a classification of employees or accepts such a classification submitted by the insurance company for payroll purposes and later undertakes to show that the classification is improper. In fact, it appears

from the *Royal* case as if the court was stating that the proof offered by the defendant was insufficient. The facts here were not sufficiently developed for us to know whether the original classification of these executives for payroll purposes is one that was either made by the insureds or one which was accepted by them as the basis for making the regular audits until such time as exception was taken in this lawsuit. Under these circumstances, we cannot say that the trial court erred in placing the burden of proof on the parties who challenged the correctness of the schedules.

The appellants next argue that the policies covering onshore personnel and others than those working offshore were void and that therefore no premiums could be found to be due on them, because the retrospective rating plan contained in the offshore policy, which was adopted by endorsement of the onshore policies, had not been filed with the proper insurance officials of the state of Louisiana, citing LSA–R.S. 22:1407A(1), 22:1420, 22:1402 and 22:620 all as amended.[1] The insurance company responds by pointing to the trial court's finding of fact that the respective policies had been filed and, alternatively, contends that the mere failure to file would not avoid the policy completely. It supports its contention with respect to the legal issue by citing § 22:653 which reads, under the heading "Validity of Noncomplying Forms:"

> Any insurance policy, rider or endorsement hereafter issued and otherwise valid, which contains any condition or provision not in compliance with the requirements of this Code, shall not be rendered invalid thereby, but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider or endorsement been in full compliance with this Code.

■ We conclude that there was sufficient evidence from which the trial court could find, as it did, that the endorsement had actually been filed. As to the alterna-

tive position taken by the insurance company, the appellants cited no Louisiana case holding that the failure to file an insurance policy endorsement voids the policy. They did not respond to Highlands' reliance on LRS 22:653 "Validity of Noncomplying Forms." They have not, thus, established to our satisfaction the proposition that the failure to file rendered the endorsement ineffective. *Cf. Elston v. Shell Oil Co.,* 376 F.Supp. 968 (E.D.La.1973), *aff'd without opinion,* 495 F.2d 1371 (5th Cir. 1973).

■ Finally, the defendants contended that the policies for the three assureds could not be combined for rating purposes because there had been no election to combine. The trial court reviewed the evidence and considered the circumstances, including the course of conduct between the parties and the manner in which the accounts were handled and concluded: "that the preponderance of the evidence lay with plaintiff and established that there was in fact an agreement to combine the policies for rating purposes." We conclude that this finding of fact by the trial court is not clearly erroneous. It must, therefore, be sustained.

The judgment is AFFIRMED.

---

1. The offshore policies, about which the major part of this case centers, deal with coverage outside the territorial waters of Louisiana, and they are not subject to filing under the local law.