Frank HARPER, Appellant,

v.

**K & W TRUCKING CO., Transit Casualty Company, Crawford & Company, and Alaska Workers' Compensation Board, Appellees.**

No. S–1321.

Supreme Court of Alaska.

Sept. 26, 1986.

Chancy Croft, Fairbanks, for appellant.

Robin G. Wilcox and Jerome H. Juday, Faulkner, Banfield, Doogan & Holmes, Anchorage, for appellees.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

### THE FACTS

This case arises out of a workers' compensation claim by Frank Harper against K & W Trucking. Harper agreed to settle the claim for a lump sum payment of $45,-000. The Alaska Workers' Compensation Board approved the settlement agreement on February 10, 1984. Harper contends that K & W and its insurance carrier, Transit Casualty (hereinafter defendants), must pay him a penalty because they did not honor the settlement agreement before the statutory deadline.

Under AS 23.30.155(f), the defendants had fourteen days in which to make payment under the settlement agreement or pay a twenty percent penalty.[1] On February 16, within the fourteen day period, the defendants mailed a draft for $45,000 to Harper, payable through the Bank of America.

On February 23 or February 24, still within the fourteen day period, Harper endorsed the draft and turned it over to his local bank, National Bank of Alaska (NBA). NBA forwarded the draft to the Bank of America in Los Angeles. The Bank of America wired the funds to NBA, where they were credited to Harper's checking account on March 2, 1984, minus a $17.45 collection fee. Thus, Harper received a $45,000 draft before the statutory deadline, but could not use the funds until six days after the deadline.

Harper applied to the Workers' Compensation Board for the twenty percent late payment penalty ($9,000) under AS 23.30.-155(f) plus attorney's fees ($900). The Board denied the application. The trial court affirmed the Board's decision, except that it awarded Harper $17.45 (the amount deducted as a bank collection fee) plus twenty percent of that amount.

### DISCUSSION

Alaska Statute 23.30.155(f) requires that the employer or its insurer pay "compensation" within fourteen days. The issue is whether the draft received by Harper amounted to "compensation." For the answer, we turn first to AS 45.03.802, Alaska enactment of the Uniform Commercial Code Section 3-802. This statute "states the legal effect [ ] on [an] underlying obligation when one takes a negotiable instrument for that obligation." J. White & R. Summers, *Uniform Commercial Code* § 13-20 at 540 (2d ed. 1980).

The statute provides that:

(a) *Unless otherwise agreed, if an instrument is taken for an underlying obligation,*

(1) the obligation is pro tanto discharged if a bank is drawer, maker, or acceptor of the instrument and there is no recourse on the instrument against the underlying obligor; and

(2) *in any other case, the obligation is suspended pro tanto until the instrument is due or, if it is payable on demand, until its presentment;* if the instrument is dishonored, action may be maintained on either the instrument or the obligation; discharge of the underlying obligor on the instrument also discharges him on the obligation....

(Emphasis added).[2]

In other words, the statute says that the acceptance of an instrument, e.g.,

---

1. Alaska Statute 23.30.155(f) provides:

   If compensation payable under the terms of an award is not paid within 14 days after it becomes due, there shall be added to that unpaid compensation an amount equal to 20 percent of it, which shall be paid at the same time as, but in addition to, the compensation, unless review of the compensation order mak-

   ing the award is had as provided in AS 23.30.-125 and an interlocutory injunction staying payments is allowed by the court.

2. "Instruments payable on demand include those payable at sight or on presentation and those in which no time for payment is stated." AS 45.03.108. Harper's draft was payable on demand.

the draft, suspends the underlying obligation, e.g., payment pursuant to the settlement agreement, until the instrument is either paid (which discharges the obligation), or dishonored (which reimposes the obligation).

■ The statute strikes a balance between two possible approaches. Under one approach, the mere acceptance of the instrument would discharge the obligation. Under a second approach, acceptance of the instrument would have no effect and the underlying obligation would remain in force until cash actually changed hands. The statute effects a compromise between these two approaches by suspending the obligation, but only until it is satisfied. Thus, under AS 45.03.802, Harper's receipt of the draft (before the deadline) suspended the defendants' obligation to him, contingent on final clearance. Since the draft was honored, the obligation was discharged and the defendants are not subject to a penalty.

Harper argues, however, that a different statute—AS 21.89.030—governs the transaction. This statute states: "An insurance company doing business in this state may not pay a judgment or settlement of a claim in this state for a loss incurred in this state with an instrument other than a negotiable bank check payable on demand and bearing even date with the date of writing."

■ Instead of a bank check, the defendants paid Harper with a "payable through" draft. A "payable through" draft is similar to an ordinary check, but is different in that a check is drawn on a bank, whereas a "payable through" draft is actually drawn on the drafter itself (here, the defendants). T. Quinn, *Quinn's Uniform Commercial Code Commentary and Law Digest* ¶ 3–

120[A][1] (1978). The upshot is that the bank named on the draft is merely a collecting bank which has no authority to make payment, but must present the draft to the drafter for payment. AS 45.03.120 (UCC 3–120). The "payable through" draft is used for a variety of reasons, e.g., to control the float. T. Quinn, *supra*, at ¶ 3–120[A][1]. It provides the drawer with greater control over payment than ordinary checks. *Id.*

■ The "payable through" draft sent to Harper violated AS 21.89.030 because it was not a bank check.[3] But whereas AS 45.03.802 directly addresses the effect of negotiable instruments on underlying obligations, AS 21.89.030 does not speak at all to the issue. This statute concerns only the form of payment which must be used for settling insurance claims, not its effect on an underlying obligation.

■ Alaska Statute 21.89.030 is an administrative tool for the use of the division of insurance, not private parties. The only penalty which the legislature specifically authorized for violations of AS 21.89.030 is a civil penalty of not more than $2,500 as determined, after a hearing, by an appointee of the insurance director. *See* AS 21.-90.020. Even if one is found liable for the entire $2,500, this amount is payable to the state, not the private party who received the instrument. Under Harper's interpretation, he would obtain $9,000 (the twenty percent penalty) automatically, without a hearing. This is an unreasonable extension of the statute.

The division of insurance may bring an action against Transit Casualty if it finds that Transit has not satisfied the form of

---

"Presentment is a demand for acceptance or payment made upon the maker, acceptor, drawee, or other payor by or on behalf of the holder." AS 45.03.504(a).

3. However, a number of jurisdictions have held that a "payable through" draft binds the issuer upon issuance, as would a bank check, and does so even if the draft states "upon acceptance." *See, e.g., Canal Insurance Company v. First Na-*

*tional Bank of Fort Smith,* 268 Ark. 356, 596 S.W.2d 709, 713 (Ark.1980); *Lialios v. Home Ins. Companies,* 87 Ill.App.3d 740, 43 Ill.Dec. 193, 410 N.E.2d 193, 194 (Ill.App.1980); *Frickleton v. Fulton,* 626 S.W.2d 402, 408 (Mo.App.1981); *Falk's Food Basket v. Selected Risks Ins. Co.,* 214 Pa.Super. 522, 257 A.2d 359, 360 (Pa.Super. 1969).

payment requirements of AS 21.89.030.[4] In this way, AS 45.03.802 and AS 21.89.030 do not conflict. Under Harper's interpretation, however, we would have to choose between the two.

For these reasons, we AFFIRM the trial court's decision.[5]

---

4. The Workers' Compensation Board stated that it would inform the director of the Division of Insurance about the "payable through draft" for whatever action it deemed appropriate.

5. Since the defendants did not appeal the trial court's award of a 20% penalty on the $17.45 which was deducted as a collection fee, this issue is not before the court.