N O. 93-138

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

CAROL SAGAN,

      Plaintiff and Appellant,

  -vs-

PRUDENTIAL INSURANCE COMPANY
OF AMERICA,

      Defendant and Respondent.

APPEAL FROM:    District Court of the Eighth Judicial District,
              In and for the County of Cascade,
              The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Robert J. Vermillion: Smith, Walsh, Clarke &
          Gregoire, Great Falls, Montana

      For Respondent:

          William D. Jacobsen and John D. Stephenson, Jr.;
          **Jardine,** Stephenson, Blewett & Weaver, Great Falls
          Montana

Submitted on Briefs:  July 1, 1993

Decided:  August 5, 1993

FILED

Filed:  AUG 5 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice **Karla M.** Gray delivered the Opinion of the Court.

In this action by the beneficiary of a life insurance policy against an insurer, we conclude that **§ 33-20-121(2),** MCA, must be read into an insurance policy containing an otherwise valid suicide exclusion.  Therefore, we affirm.

The facts of this case are not in dispute.  Prudential Insurance Company of America (Prudential) issued a life insurance policy to Samuel Sagan on July 1, 1989, providing for payment of $50,000 in benefits upon his death.  Samuel Sagan died on September **22,** 1990, as a result of suicide.  Carol Sagan (Sagan) is Samuel Sagan's widow and the named beneficiary under the Prudential life insurance policy.

Sagan submitted a claim for the policy benefits.  Prudential denied the claim, relying on a suicide exclusion in the policy which provided that if the insured died by suicide within two years from the issue date, Prudential would pay out no more than the sum of the premiums paid.   At the time it denied Sagan's claim, Prudential tendered to her a check in the amount of $802.71, representing the sum of the premiums paid plus interest: Sagan refused the tendered check.

Sagan commenced this action against Prudential in the Eighth Judicial District Court, Cascade County, seeking the full $50,000 benefit under the policy.  She alleged that the policy did not comply with **§ 33-20-121(2),** MCA, which requires life insurance policies with suicide exclusions to provide for payment of an

2

amount not less than the commissioner's reserve value in the event of death under circumstances to which the suicide exclusion applies. She further alleged that compliance with the statute was not waived by the Montana Commissioner of Insurance and that the Commissioner did not specifically approve the nonconforming "sum of the premiums" provision in Prudential's policy. Absent compliance, waiver or approval, Sagan asserted entitlement to the full $50,000 benefit on the basis that, pursuant to § 33-15-315, MCA, the policy was to be construed as though the suicide exclusion provision did not exist.

Both parties moved for summary judgment. They filed an Agreed Statement of Facts and agreed that there were no material facts in dispute.

The District Court determined that Prudential was entitled to summary judgment as a matter of law, granted Prudential's motion, and entered judgment accordingly. Sagan appealed.

Sagan asserts a number of legal errors by the District Court. This case can be resolved, however, by addressing only her final argument: that the District Court erred in reading § 33-20-121(2), MCA, into the policy by operation of law. Our standard of review of a trial court's conclusions of law is whether the conclusions are correct. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603.

Section 33-20-121(1)(v), MCA, expressly permits life insurance policies to exclude or restrict coverage in the event of a death resulting from suicide within two years of the date of issue of the

3

policy. The Prudential policy at issue here contained such a suicide exclusion. Moreover, Samuel Sagan's death as a result of suicide within two years after the issuance of the policy is not disputed. Thus, the suicide exclusion is applicable here.

Section 33-20-121(2), MCA, requires a policy containing an authorized suicide exclusion also to provide that, in the event of a death under the circumstances to which the exclusion applies, the insurer must pay an amount not less than that determined according to the Commissioner's reserve valuation method. Prudential's "return of premiums" language does not mirror the language of § 33-20-121(2), MCA; nor does it expressly guarantee payment of an amount not less than the reserve value amount. It is undisputed, however, that the amount Prudential tendered to Sagan exceeds the amount of payment required by utilizing the methodology contained in § 33-20-121(2), MCA.

The District Court determined that § 33-15-315, MCA, required that the Commissioner's reserve value provision of § 33-20-121(2), MCA, be read into the Prudential policy. While Sagan agrees that § 33-15-315, MCA, is applicable, she argues that a proper application of the statute to the policy before us results in invalidating the entirety of the suicide exclusion rather than reading the reserve value provision into the policy. We cannot agree.

Section 33-15-315, MCA, provides in pertinent part:

Any insurance policy . . . which contains any condition or provision not in compliance with the requirements of this code shall not be thereby rendered invalid but shall be construed and applied in accordance with such

4

conditions and provisions as would have applied **had such** policy . . . been in full compliance with this code.

The statute codifies general principles of insurance law contained in both case law and leading insurance authorities. As long ago as our decision in Lee v. Providence Washington Ins. Co. **(1928),** 82 Mont. 264, 276, 266 **P.** 640, 644, we concluded that the provisions of insurance statutes are to be read into an insurance policy as though written therein: our decisions on that question have remained consistent. See, e.g., First Sec. Bank of Bozeman v. Goddard **(1979),** 181 Mont. 407, 414, 593 **P.2d** 1040, 1044. Leading authorities in the field of insurance law agree:

> Contracts of insurance . . . are presumed to have been made with reference to the law of the land, including the statutory laws which are in force and are applicable, and such statutes . . . enter into and become a part of the contract as much as if they were actually incorporated therein. Provisions of an insurance code are in the nature of special provisions pertaining to insurance contracts, **which** are superimposed upon those provisions of law which cover contracts generally.

1 Couch on Insurance 2d (Rev. ed) **§ 13:6.** See also 13 Appleman, Insurance Law and Practice (1976 ed.) § 7382.

The role of the courts in construing a statute is to determine what is in terms or substance contained therein. Section 1-2-101, MCA. Our primary tool for ascertaining the legislature's intent is the plain meaning of the words used. Dorn v. Bd. of Trust. of Billings Sch. Dist. **(1983),** 203 Mont. 136, 144, 661 **P.2d** 426, 430.

The legislative intent in enacting § 33-15-315, MCA, is clear from the words used. The plain meaning of § 33-15-315, MCA, is to give effect to insurance policies and provisions to the fullest extent possible by reading statutory provisions into them to

achieve full compliance with the insurance code. Nothing in the plain language of the statute supports applying it to <u>invalidate</u> policy provisions.

Here, the policy contains a plain and clear suicide exclusion specifically permitted by § 33-20-121(1)(v), MCA. Pursuant to that provision, both Samuel Sagan and Prudential contemplated an exclusion from coverage for death by suicide within two years. The policy also contemplates <u>some</u> payment to the beneficiary in the event of such a suicide. While the payment provided for in the policy in the event of a suicide arguably does not expressly comply with § 33-20-121(2), MCA, the parties clearly contemplated payment in an amount much reduced from the total benefit amount in the policy. Under these circumstances, we conclude that application of § 33-15-315, MCA, to the policy at issue mandates reading the provisions of § 33-20-121(2), MCA, into the policy. In this manner, the arguably nonconforming payment in the event of suicide provision does not render any portion of the policy invalid: instead, the § 33-20-121(2), MCA, provision is included in the policy so as to bring the entirety of the suicide exclusion and the policy itself into full compliance with Montana's insurance code. This is the mandate of § 33-15-315, MCA.

Sagan argues that reading § 33-20-121(2), MCA, into the policy rather than invalidating the entire suicide exclusion is justified only if the insurance code is designed to protect insurers rather than insureds and their beneficiaries. She asserts in conclusory fashion that the legislature intended the insurance statutes in

6

general and § 33-15-315, MCA, in particular, to protect insureds and not the insurance industry. In this regard, she cites several cases purporting to require a liberal construction of the statute.

Sagan's arguments are flawed. As discussed above, § 33-15-315, MCA, requires no real interpretation: it is plain and clear on its face and is **not** in accord with the construction Sagan advances. To accept her argument that § 33-15-315, MCA, requires <u>voiding</u> a suicide exclusion expressly permitted by statute would contravene the plain language contained therein by invalidating rather than effectuating provisions clearly contemplated by the parties.

Nor does the plain language of the statute indicate that its purpose is to **favor** <u>either</u> party to an insurance policy; the statutory language is entirely neutral. Only where legislative intent cannot be determined from the content of the statute may we properly refer to legislative history. <u>Dorn</u>, 661 **P.2d** at 430.

Moreover, the cases relied on by Sagan to support her "liberal construction" theory are inapposite. Neither **Attix** v. Robinson (D. Mont. **1957),** 155 **F.Supp.** 592, nor State ex rel. School, Etc. v. Board of County **Com'rs,** Etc. **(1978),** 180 Mont. 285, 590 **P.2d** 602, stands for the proposition that insurance statutes which are clear on their face should be **"liberally** construed."

<u>Attix</u> was an action for refund of federal estate taxes involving the Technical Changes Act of 1953. The Act was remedial in nature and, being unable to ascertain its purpose from its plain language, the federal district court relied on the "general rule that relief or remedial provisions must be liberally construed to

7

effectuate the objective sought." 155 F.Supp. at 596. State ex rel. School. Etc. was a Subdivision and Platting Act case in which we were called upon to interpret such statutory language as "appropriate" and "whenever necessary;" we noted the Act's stated purpose of protecting the public health, safety and general welfare and applied the principle of statutory construction that legislation enacted for such purposes should be liberally construed. 590 P.2d at 605. Neither case involved insurance statutes or unambiguous statutory language and, therefore, neither has any application to the case before us.

We hold that the District Court did not err in concluding that § 33-20-121(2), MCA, must be read into the policy at issue by operation of § 33-15-315, MCA.

Affirmed.

_____
                        Justice

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices

8

August  5,  1993

## CERTIFICATE  OF  SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following    named:


Robert J. Vermillion, Esq.
Smith, Walsh, Clarke & Gregoire
P.O. Box  2227
Great Falls. MT 59403-2227

John D. Stephenson, Jr. & William D. Jacobsen
Jardine, Stephenson, Blewett & Weaver, P.C.
P.O.  Box  2269
Great Falls, MT 59403


ED  SMITH
CLERK  OF  THE  SUPREME  COURT
STATE  OF  MONTANA

BY: _____
   Deputy