Raymond J. THERCHIK, individually and as Personal Representative of the Estate of Isadore Therchik; Katie M. Tony, Personal Representative for the Estate of Theresa Tony and the Estate of Henry Tony; Jimmy Tony; Nick Therchik; and Laura Therchik, Appellants,

v.

GRANT AVIATION, INC.; R. Bruce McGlassen; and Mark W. Heikel, Appellees.

No. S–10437.

Supreme Court of Alaska.

July 25, 2003.

Daniel C. Kent, Law Office of William G. Azar, P.C., Anchorage, for Appellants.

Daniel T. Quinn, Gregory R. Henrikson, Richmond & Quinn, Anchorage, for Appellees.

Before: FABE, Chief Justice,
MATTHEWS, EASTAUGH, BRYNER, and
CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

This case concerns the validity of a liability insurer's endorsement limiting coverage of Alaska Civil Rule 82 attorney's fees awards otherwise covered by its policy. The limiting endorsement Houston Casualty Company attached to Grant Aviation's policy deviated from the model form adopted by the Alaska Division of Insurance and had not been pre-approved by the division's director. We conclude that the endorsement did not "conform with" the model form and therefore violated 3 Alaska Administrative Code (AAC) 26.550 (2000). We also conclude that AS 21.42.220 does not render the endorsement enforceable against the insured. We therefore reverse the judgment entered against the claimants and remand for calculation of the attorney's fees recoverable under the insurance policy.

## II. FACTS AND PROCEEDINGS

Raymond Therchik, Nick Therchik, Laura Therchik, Katie Tony, and Jimmy Tony sued Grant Aviation, Inc., R. Bruce McGlassen, and Mark Heikel (collectively "Grant Aviation") after an airplane owned and operated by Grant Aviation crashed near Bethel in 1999, killing family members of the plaintiffs.[1] We refer here to the plaintiffs collectively as the "Therchiks." Houston Casualty Company had issued a policy to Grant Aviation insuring it against liability for damages.

The language of the policy also covered Grant Aviation's liability for "all costs"—and therefore attorney's fees—awarded against Grant Aviation in addition to the applicable facial limit of liability.[2] This "all costs" provision potentially required Houston Casualty to pay "unlimited" attorney's fees awarded under Alaska Civil Rule 82, i.e., a Rule 82 attorney's fees award based on the full amount of all damages awarded at trial against Grant Aviation, even if those damages exceeded the policy's facial limits. The policy Houston Casualty issued to Grant Aviation also contained a separate provision that attempted to limit the Rule 82 coverage. That provision, Endorsement 8, provides that the policy only covers Rule 82 awards based on a final award not exceeding the policy's applicable facial limits of liability.[3]

In 2001 the Therchiks and Grant Aviation entered into a partial settlement. Per the settlement agreement, Houston Casualty paid the Therchiks the facial liability limits of Grant Aviation's insurance policy—$500,000 per seat—plus $52,500 in undisputed attorney's fees per seat. Per the agreement, the parties agreed to litigate in the existing lawsuit the question whether Houston Casualty owed additional attorney's fees beyond $52,500 per seat or had successfully limited its Rule 82 coverage through Endorsement 8.

The Therchiks claimed that Houston Casualty owed unlimited attorney's fees under the policy language covering "all costs taxed against the Insured in any suit defended by the Company." Grant Aviation argued that Endorsement 8 effectively limited Houston Casualty's Rule 82 liability. The Therchiks

---

1. Raymond Therchik sued Grant Aviation individually and as personal representative of Isadore Therchik's estate. Katie Tony sued individually and as personal representative of Theresa and Henry Tony's estates. The other plaintiffs sued in their individual capacities.

2. This provision of the policy Houston Casualty issued to Grant Aviation states in part:

   During such time as [Houston Casualty] is obligated to defend a claim or claims under the provisions of the preceding paragraph, [Houston Casualty] will pay with respect to such claim, in addition to the applicable limit of liability:
   . . . .

   2. [A]ll costs taxed against the Insured in any suit defended by [Houston Casualty]. . . .

3. Endorsement 8 provides in part:

   [Houston Casualty] will only pay a limited amount of attorney's fees an insured is required to pay under Rule 82 of the Alaska Rules of Court. . . . The most [Houston Casualty] will pay for attorney's fees the insured is liable to pay under Rule 82 of the Alaska Rules of Court ("Rule 82") is that amount of attorney's fees the insured would be liable to pay under Rule 82 if the claim was a contested claim and the amount of the final award was equal to the limit of liability for the applicable coverage stated in the policy.

argued that Endorsement 8 was unenforceable because it did not include the exact language of Notice A, a model form adopted by the Alaska Division of Insurance, and had not been approved in writing by the division, per the alternative requirements of 3 AAC 26.550. Notice A is one of four model notice forms the division drafted and adopted by reference in 3 AAC 26.550. It is undisputed that Notice A is the applicable notice form for the type of insurance policy at issue here.

The superior court held that although Endorsement 8 did not "conform with" Notice A, it was "substantially equivalent" to Notice A. The court accordingly enforced Endorsement 8 and granted summary judgment for Grant Aviation.

The Therchiks appeal.

## III. DISCUSSION

### A. Standard of Review

█ We review grants of summary judgment de novo.[4] We will affirm a grant of summary judgment "if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law."[5] We review questions of law, including interpretation of statutes, regulations, and contracts, using our independent judgment.[6]

### B. The Therchiks May Challenge the Validity of Endorsement 8 Under 3 AAC 26.550.

Grant Aviation argues in passing that the pertinent statutes and regulations "contemplate enforcement by the director, not private parties." It notes that the Alaska Division of Insurance may impose penalties on insurers that fail to file required forms.

But Grant Aviation points to no statute or regulation that prevents private litigants in civil actions from challenging the validity of insurance policy provisions that conflict with substantive requirements of state statutes or regulations. Nor does it refer us to any opinion in which we have prevented civil litigants from doing so.

The issue ultimately before us is whether a policy provision that attempts to limit coverage is enforceable if it differs from the form required by a state regulation. Our opinions have often dealt with claims brought by private parties challenging the validity of policy provisions that arguably conflict with state statutes or regulations.[7] We have never intimated that private parties are unable to litigate the validity of those limiting provisions. Our opinions holding that particular provisions do not comply with statutory and regulatory standards tacitly acknowledge that private litigants can obtain rulings about the validity of such provisions.[8]

Although 3 AAC 26.550 is silent on the issue of private enforcement, we have approved private actions to enforce Title 21 requirements on several occasions.[9] For example, in *Peter v. Schumacher Enterprises, Inc.*, we held that an insured could bring a private cause of action in tort alleging that an insurer violated AS 21.89.020(c) and (e).[10] We recognized that the statutory remedy in Title 21 for violation of AS 21.89.020(c) and

---

4. *Simmons v. Ins. Co. of N. Am.*, 17 P.3d 56, 59 (Alaska 2001).

5. *Id.*

6. *Holderness v. State Farm Fire & Cas. Co.*, 24 P.3d 1235, 1237–38 (Alaska 2001); *Russell v. Criterion Ins. Co.*, 917 P.2d 664, 666 (Alaska 1996).

7. *See, e.g., Holderness*, 24 P.3d at 1238; *State Farm Mut. Auto. Ins. Co. v. Harrington*, 918 P.2d 1022, 1025 (Alaska 1996); *Hughes v. Harrelson*, 844 P.2d 1106, 1106–07 (Alaska 1993).

8. *See* cases cited *supra* note 7.

9. *See, e.g., Peter v. Schumacher Enters., Inc.*, 22 P.3d 481, 488–89 (Alaska 2001) ("[P]rivate actions to enforce the requirements of [AS 21.89.020] have been maintained and approved by this court"); *Harrington*, 918 P.2d at 1025–26; *Burton v. State Farm Fire & Cas. Co.*, 796 P.2d 1361, 1363 (Alaska 1990).

10. *Peter*, 22 P.3d at 490; *see also* AS 21.89.020(c) (requiring automobile liability insurers to offer coverage prescribed in AS 28.20.440 and 28.20.445 or AS 28.22 for "protection of persons insured under policy who are legally entitled to recover damages for bodily injury or death from owners or operators of uninsured or underinsured motor vehicles"); AS 21.89.020(e) (allowing waiver of the coverage in AS 21.89.020(c) and (d)).

(e) was a civil penalty of not more than $2,500 assessed by the state in administrative proceedings before the Division of Insurance.[11] We observed that the $2,500 penalty was relatively modest, and that the enforcement resources of the Division of Insurance were necessarily limited. We further observed:

> Without a tort remedy it seems likely that many violations of the requirements of subsections (c) and (e) would go unredressed. Further, it is difficult to see how providing an implied tort remedy could interfere with state enforcement. The tort action should provide a meaningful incentive to insurance companies to comply with the statutory requirements.[12]

Similarly, allowing private parties to litigate the enforceability of provisions such as Endorsement 8 gives insurance companies an incentive to comply with the notice requirements of 3 AAC 26.550 if they wish to limit their Rule 82 coverage and expose their insureds to attorney's fees awards that may not be fully covered under their policies.

Grant Aviation relies on *Harper v. K & W Trucking Co.*,[13] in which we rejected an employee's claim to recover a statutory penalty for an insurer's violation of former AS 21.89.030.[14] That statute required insurance companies to pay settlements or judgments with negotiable bank checks.[15] The employee in *Harper* received a settlement payment for a workers' compensation claim in the form of a "payable through" draft instead of a bank check, in violation of that statute.[16] We held that the employee was not entitled to recover the statutory penalty because AS 21.89.030 "is an administrative tool for use of the division of insurance, not private parties." [17]

*Harper* does not control here. In denying a private right of action, we differentiated between a statute that "directly addresses the effect of negotiable instruments on underlying obligations" and AS 21.89.030, which "concerns only the form of payment which must be used for settling insurance claims, not its effect on an underlying obligation." [18] We reasoned that a private cause of action was not necessary to enforce a statute that was primarily an administrative tool for the division.[19]

Unlike AS 21.89.030, 3 AAC 26.550 is not merely an administrative tool employed to facilitate insurance transactions. Rather it is intended to force insurers to comply with proper notice requirements to protect insureds' reasonable expectations.[20] It therefore properly bears on the validity of a policy provision that limits coverage.

■ Because a dispute about whether a limiting endorsement "conforms with" Notice A necessarily assumes that the director did not approve the limitation before the insurer issued the endorsement, it almost inevitably will arise only after an accident occurs. Post-accident agency enforcement will provide little relief to insureds whose rights may

---

11. *Peter*, 22 P.3d at 488; *see also* AS 21.90.020, which provides in part that "[a] person, determined by the director, following an appropriate hearing ... to have violated a provision of this title, is subject to a civil penalty of not more than $2,500."

12. *Peter*, 22 P.3d at 489.

13. *Harper v. K & W Trucking Co.*, 725 P.2d 1066 (Alaska 1986).

14. AS 21.89.030 (1968), *amended by* ch. 62, § 106, SLA 1995. Before it was amended in 1995, AS 21.89.030 provided:
   No insurance company doing business in this state may pay a judgment or settlement of a claim in this state for a loss incurred in this state with an instrument other than a negotiable bank check payable on demand and bearing even date with the date of writing.

15. *Harper*, 725 P.2d at 1068.

16. *Id.*

17. *Id.*

18. *Id.*

19. *Id.*

20. The Alaska Director of Insurance observed in Order R 96–03 that "limitations of coverage for attorney fees taxable as costs against an insured according to Alaska Rule of Civil Procedure 82 that do not address an insured's reasonable expectations for coverage or do not provide adequate disclosure of the insured's potential uninsured liability constitute an unfair or deceptive trade act."

have been fixed when the loss occurred. Allowing the interested private parties to litigate the validity issue is a useful way to encourage compliance. We therefore hold that private parties may litigate whether an endorsement attempting to limit attorney's fees coverage is enforceable if it arguably does not comply with 3 AAC 26.550.

Grant Aviation also argues that the Therchiks are not the assignees of Grant Aviation's rights against Houston Casualty. But Grant Aviation does not argue that the absence of an assignment altogether prevents the Therchiks from seeking a declaration that Endorsement 8 is invalid. Such an argument would be inherently inconsistent with the terms of the settlement, which Grant Aviation characterizes on appeal as providing that "the settling parties will abide by the ultimate court ruling on the one remaining issue—the extent of attorney fees owed under the policy." The Therchiks and Grant Aviation (and, we assume, Houston Casualty) agreed to settle on terms that expressly permitted the lawsuit to determine "whether there are any additional amounts in ... Rule 82 attorneys' fees within the coverage of the Houston Casualty Company policy which will be paid by Houston Casualty Company should the Bethel Superior Court award additional funds." No argument is asserted by the Therchiks or Grant Aviation that Houston Casualty should have been a named party in the continuing litigation or that its absence somehow affects the outcome of this appeal.

### C. Endorsement 8 Does Not Satisfy 3 AAC 26.550.

The primary issue on appeal is whether Endorsement 8 satisfies the requirements of 3 AAC 26.550. The Therchiks argue that the superior court erred in declaring valid an endorsement that neither conformed with Notice A nor had received the director's approval, as 3 AAC 26.550 alternatively requires. The regulation requires an insurer

seeking to limit coverage for Civil Rule 82 attorney's fees awards against its insured to include a "policyholder notice" that must either:

(1) *conform with* the division's

(A) Attorney Fees Coverage Notice A, dated March 29, 1996, and hereby adopted by reference, for a policy with a duty to defend in addition to its limit of liability;

... or

(2) be approved in writing by the director upon a determination that the proposed notice is *substantially equivalent* to the division's Attorney's Fees Coverage Notice A.... [21]

It is undisputed that the director had not approved Endorsement 8 before it was issued to Grant Aviation. The controlling question therefore is whether Endorsement 8 satisfied the alternative requirement that it "conform with" Notice A.

The superior court held that Endorsement 8 did not "conform with" Notice A but was nonetheless "substantially equivalent" to it. The court defined "conform with" as being "very close to identical [to]," and described "substantially equivalent" as a "lesser standard." In holding that Endorsement 8 validly limited the coverage, the court observed, "although there's different wording used, different form used ... it seems to me that it is at least as good as Notice A in informing an insured about the limitation and putting the insured on notice that part of the attorneys' fees will not be covered under the policy."

Grant Aviation first asserts that the endorsement need not comply with the letter of 3 AAC 26.550, but must only satisfy the notice requirements established in *Russell v. Criterion Insurance Co.*—a case in which we upheld the validity of an endorsement limiting an insurer's obligation to pay prevailing party attorney's fees awarded against the insured.[22] There we relied on 3 AAC 29.010,[23] and interpreted that regulation to

---

**21.** 3 AAC 26.550(b) (emphasis added).

**22.** *Russell v. Criterion Ins. Co.*, 917 P.2d 664 (Alaska 1996).

**23.** Former 3 AAC 29.010 (1982) read in pertinent part:

(a) Any policy form subject to the requirements of AS 21.42 which provides defense, settlement, or supplementary payments, may

require that an insurer limiting coverage "must clearly disclose the limitation itself," and "must clearly disclose the insured's potential liability for attorney's fees if the judgment exceeds the liability limits of the policy."[24] Grant Aviation argues that Endorsement 8 is valid because it satisfies the requirements we discussed in *Russell.*

Grant Aviation's reliance on *Russell* is misplaced. The regulation on which we relied there, 3 AAC 29.010, was repealed in July 1996, after we decided *Russell.* The Division of Insurance replaced 3 AAC 29.010 with 3 AAC 26.500–.550. Division of Insurance Bulletin 96–04 gave notice to insurers of "new requirements regarding coverage for Alaska Rule of Civil Procedure 82." The bulletin informed insurers that after July 1, 1996 the division required that policies limiting Rule 82 coverage "must satisfy the minimum standards" of the newly promulgated regulations. In an order announcing the adoption of 3 AAC 26.500–.550, the Alaska Director of Insurance explained the 1996 amendments as follows:

> [L]imitations of coverage for attorney fees taxable as costs against an insured according to Alaska Rule of Civil Procedure 82 that do not address an insured's reasonable expectations for coverage or do not provide adequate disclosure of the insured's potential uninsured liability constitute an unfair or deceptive trade act. Therefore, the adoption or repeal of regulations under this order is appropriate.

The *Russell* criteria are therefore inapplicable to questions arising under the new regulations. To be effective, Endorsement 8 had to comply with 3 AAC 26.550.[25]

The superior court held that Endorsement 8, which had not received director approval,

was valid because it was "substantially equivalent" to Notice A. A post-accident judicial determination of substantial equivalence to Notice A is not sufficient to satisfy 3 AAC 26.550. Per the regulation, the director must determine that the proposed notice is "substantially equivalent" to Notice A and then approve the proposed notice in writing. The director did not approve Endorsement 8 before it was issued. Therefore Endorsement 8 could satisfy 3 AAC 26.550 only if it "conforms with" Notice A.

The regulation does not explicitly define "conform with." That the alternative provision allows the director to preapprove "substantially equivalent" proposed language suggests that the "conform with" provision contemplates a higher standard. There would, after all, be no need or incentive to seek preapproval if the two standards meant the same thing. Likewise, the opportunity to seek preapproval implies that the director has the administrative expertise to distinguish between those deviations that provide insureds with adequate notice of the proposed limitations and those that do not. No such disinterested expert review occurs when an insurer issues a limiting endorsement without seeking the director's preapproval. It is logical to require something more than mere "substantial equivalence" to Notice A in the absence of administrative review.

The superior court recognized that "conform with" must mean something "very close to identical," rather than "word-for-word identical." We agree with this observation but disagree with superior court's ultimate findings. The court's "very close to identical" definition is workable because it accounts for minute deviations, such as im-

---

limit payments of attorney fees taxed against the insured as costs under Rule 82 of the Alaska Rules of Civil Procedure. The limit may not be less than the amount which would be allowed under Civil Rule 82(a)(1) to the prevailing party in a contested case if the amount recovered were equal to the liability limit of the policy. This limit must be in addition to the otherwise applicable limit of liability of the policy.

....

(d) An insurer limiting coverage as permitted in (a) of this section must clearly disclose to its

insured the limitation and the insured's potential liability for attorney fees if judgment exceeds the liability limits of the policy.

24. *Russell,* 917 P.2d at 666.

25. The division promulgated 3 AAC 26.500–.550 in 1996. Houston Casualty issued the insurance policy at issue here for the policy period of December 15, 1998 to December 15, 1999. The air crash occurred on December 7, 1999.

material punctuation errors, that would not diminish the quality of notice or the substantive message. The standard must be stringent, because anything less would denigrate the administrative expertise that fashioned Notice A as a model for adequate disclosure and eviscerate the alternative requirement for preapproval. Moreover, any dispute about conformity under subsection .550(b) will almost inevitably arise after a loss occurs. It is by then too late for the insurer to invoke agency expertise.

■ Endorsement 8 does not "conform with" Notice A because we conclude that the endorsement alters the model form's language in ways that go beyond being "minute deviations." For example, Notice A directly and forcefully informs an insured of its exposure to an award of Rule 82 attorney's fees, and its obligation to pay any fees not covered by the policy. Notice A provides in part:

Alaska Rule of Civil Procedure 82 provides that *if you are held liable, some or all of the attorney fees of the person making a claim against you must be paid by you. The amount that must be paid by you is determined by Alaska Rule of Civil Procedure 82.* We provide coverage for attorney fees for which you are liable under Alaska Rule of Civil Procedure 82 subject to the following limitation:

We will not pay that portion of any attorney's fees that is in excess of fees calculated by applying the schedule for contested cases in Alaska Rule of Civil Procedure 82(b)(1) to the limit of liability of the applicable coverage.

*This limitation means the potential costs that may be awarded against you as attorney fees may not be covered in full. You will have to pay any attorney fees not covered directly.*

(Italics in original; underline emphasis added.) The underlined language is far more direct than the language in Endorsement 8, which provides in part:

Contrary to the general rule applicable in the United States, Rule 82 of the Alaska Rules of Court awards attorneys fees to the party which prevails in bringing, or defending against, a claim. *[Houston Casualty] will only pay a limited amount of*

*attorney's fees an insured is required to pay under Rule 82 of the Alaska Rules of Court.*

The most [Houston Casualty] will pay for attorney's fees the insured is liable to pay under Rule 82 of the Alaska Rules of Court ("Rule 82") is that amount of attorney's fees the insured *would be liable to pay under Rule 82* if the claim was a contested claim and the amount of the final award was equal to the limit of liability for the applicable coverage stated in the policy.

The limit of liability for Rule 82 attorney's fees described in this section is the absolute maximum and will not change based upon the number of insured persons, vehicles, aircraft, number of injured persons, number of claimants, or number of claims arising out of the relevant occurrence.

WARNING OF EXPOSURE TO UNINSURED ATTORNEY FEES

The amount of attorney's fees the insured is liable to pay under Rule 82 may be greater than the amount [Houston Casualty] is agreeing to pay under this policy. *The insured will have to pay the excess attorney's fees charged under Rule 82.*

(Emphasis added.)

The differences are partly a matter of emphasis ("you," rather than "the insured") and partly a matter of directness ("must be paid by you" and "you will have to pay," rather than "the insured is required to pay"). Endorsement 8 and Notice A are similar in substance. But the text of Endorsement 8 is longer than the text of Notice A. Its sentence structure is more complex, and it is harder to read and understand. Each sentence in the quoted passage from Notice A averages about twenty-five words. Each sentence from the quoted Endorsement 8 passage averages about thirty-eight words. The division promulgated section .550 to increase notice and to reduce disputes about the adequacy of notice provided. In this context and given these purposes, sentence structure and word choice are important. And, had Houston Casualty wanted to limit its attorney's fees coverage using its own language, it could have complied with the

regulation by submitting its endorsement to the director for preapproval. Had it done so, the director might have required Houston Casualty to simplify or alter its text and message.

We do not read Endorsement 8 to be "very close to identical" to Notice A. The differences in substance, tone, clarity, and directness convince us that Endorsement 8 does not "conform with" Notice A. And because these differences diminish the adequacy of the notice given, we hold that Endorsement 8 does not satisfy 3 AAC 26.550.

### D. Alaska Statute 21.42.220 Does Not Save Endorsement 8.

Grant Aviation argues that even if Endorsement 8 does not "conform with" Notice A, AS 21.42.220 saves the endorsement from invalidity. That statute provides in pertinent part:

> An insurance policy, rider, or endorsement issued and otherwise valid that contains a condition or provision not in compliance with the requirements of this title, is not thereby rendered invalid but shall be construed and applied in accordance with the conditions and provisions as would have applied had the policy, rider, or endorsement been in full compliance with this title.

We have never before cited this statute. Alaska Statute 21.42.220 was enacted in 1966, when the Alaska Legislature completely revised Title 21, the state's insurance code.[26] Nothing analogous to AS 21.42.220 existed before 1966. The legislative history of the 1966 revision indicates that the legislature modeled the revised insurance laws after Montana's insurance code.[27] That code contains a "validity of noncomplying forms" provision virtually identical to AS 21.42.220.[28] However, there is no Alaska legislative history specifically addressing AS 21.42.220.

Montana and other states with savings statutes similar to AS 21.42.220 [29] interpret these provisions to save policy provisions that do not conform with their insurance codes by replacing the inconsistent policy terms with statutory provisions.[30] This usually, but not always, has the effect of reforming the policies in favor of coverage.

In *Sagan v. Prudential Insurance Co. of America* the Montana Supreme Court applied the Montana "validity of noncomplying forms" statute to save a suicide exclusion that did not comply with the state insurance code.[31] Under the authority of the savings

**26.** Ch. 120, § 1, SLA 1966.

**27.** Analysis of House Bill No. 313 (Proposed State Insurance Code), House Journal Supp. No. 12 at 3, 1966 House Journal 431 ("After careful study, it was determined that the insurance code of the State of Montana, enacted in 1961 by the Legislature of that State, would serve as a good model for the revision of Alaska's insurance laws.... [T]he Montana Code was the most modern and up-to-date body of insurance regulation of any of the fifty states.").

**28.** Section 33–15–315 of the Montana Code provides:

> Any insurance policy, rider, or endorsement hereafter issued and otherwise valid which contains any condition or provision not in compliance with the requirements of this code shall not be thereby rendered invalid but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this code.

Mont.Code Ann. § 33–15–315 (2002).

**29.** Arizona, Ariz.Rev.Stat. § 20–1118 (2002); Georgia, Ga.Code Ann. § 33–24–12(a) (2002); Hawaii, Haw.Rev.Stat. § 431:10–238 (2002); Kentucky, Ky.Rev.Stat. Ann. § 304.14–210(2) (2002); Louisiana, La.Rev.Stat. Ann. § 22:653 (2002); Montana, Mont.Code Ann. § 33–15–315 (2002); Oklahoma, Okla. Stat. Ann. tit. 36, § 3620 (2002); Virginia, Va Code Ann. § 38.2–318(A) (2002); Virgin Islands, 22 V.I.Code Ann. § 845 (2002); Washington, Wash. Rev.Code Ann. § 48.18.510 (2003); West Virginia, W. Va.Code. § 33–6–17 (2002).

**30.** *See Taylor v. MFA Mut. Ins. Co.*, 322 So.2d 842, 845–46 (La.App.1976) (holding that three-month policy had to be considered as if issued for statutory requirement of six months where insurer issued three-month policy and terminated policy for failure to pay renewal fee without providing notice of cancellation); *USAA Cas. Ins. Co. v. Yaconiello*, 226 Va. 423, 309 S.E.2d 324, 325 (1983) (holding that statute's more inclusive term "motor vehicle" superseded policy's term "automobile" because statute would also include motorcycles); *Adkins v. Meador*, 201 W.Va. 148, 494 S.E.2d 915, 920–24 (1997) (holding that statute's more inclusive requirement that insured be "using" vehicle superseded policy's requirement that insured be "occupying" vehicle).

**31.** *Sagan v. Prudential Ins. Co. of Am.* 259 Mont. 506, 857 P.2d 719, 722 (1993); *see also Georgeson v. Fid. & Guar. Ins. Co.*, 48 F.Supp.2d 1262,

statute, the court substituted the relevant statutory provision into the policy rather than invalidating the entire exclusion.[32] The court observed that the plain meaning of the statute is "to give effect to insurance policies and provisions to the fullest extent possible by reading statutory provisions into them to achieve full compliance with the insurance code. Nothing in the plain language of the statute supports applying it to *invalidate* policy provisions."[33] *Sagan* may seem to use Montana's savings statute to validate a nonconforming policy provision, to the beneficiary's detriment. But in reality, the only inconsistency between the policy provision and the insurance code concerned the amount of refund payable if the insured died by suicide within two years after the policy was issued. The policy was actually more favorable to Sagan than the code. The court rejected Sagan's attempt to invalidate the entire suicide exclusion on Sagan's theory that the refund provision deviated from the code. The deviation was immaterial to the validity of the entire exclusion.

Virginia applies its "validity of noncomplying forms" statute [34] to save nonconforming insurance policies when they impermissibly restrict the scope of coverage mandated by statute.[35] When an insurance policy grants more coverage than that prescribed by statute, the terms of the policy control.[36] In *Hill v. State Farm Mutual Insurance Co.*, the Virginia Supreme Court observed that "[t]he superseding provisions of ... [Code § 38.2–318] take effect only where an insurer seeks, by policy language, to narrow, avoid, vary or restrict the coverage the legislature has required."[37]

Grant Aviation argues that AS 21.42.220 saves Endorsement 8 from invalidity even though Houston Casualty did not obtain the insurance director's written preapproval for Endorsement 8. In support, Grant Aviation cites cases holding that an insurer's failure to follow a statute requiring the insurer to file all policy forms before issuing the policy does not invalidate that policy.[38] But the problem

---

1266 (D.Mont.1998) (applying MCA § 33–15–315 and ruling that when language of insurance policy is contrary to statute, and therefore void, policy should be construed to contain coverage mandated by law).

**32.** *Sagan*, 857 P.2d at 722.

**33.** *Id.*

**34.** Section 38.2–318(A) of the Virginia Code is substantially similar to AS 21.42.220. It provides: "Any insurance policy or form containing any condition or provision that is not in compliance with this title shall be valid, but shall be construed and applied in accordance with the conditions and provisions required by this title." Va.Code Ann. § 38.2–318(A) (2002).

**35.** *See Yaconiello*, 309 S.E.2d at 325.

**36.** *See Hill v. State Farm Mut. Ins. Co.*, 237 Va. 148, 375 S.E.2d 727, 729 (1989) (holding that uninsured motorist endorsement, which afforded broader coverage than that mandated by statute, was not superseded by more restrictive term in statute); *Interstate Van Lines, Inc. v. Artis*, No. LS 4398–2, 1991 WL 835002, at *6 (Va. Cir. June 5, 1991) (holding that "validity of noncomplying forms" statute did not apply because policy's definition of insured afforded broader coverage than that mandated by statute).

**37.** *Hill*, 375 S.E.2d at 729; *see also* 1 Lee R. Russ, Couch on Insurance § 17: 14 (3d ed.1998). It provides:

Where the statutes specify certain provisions which must form a part of a contract of insurance, and further provide that a policy issued in violation thereof should be valid, a policy which does not contain the statutory provisions is valid and must be given effect, but the provisions of the statute must be substituted for those of the policy where the two conflict. However, where the provisions of the policy are more favorable to the insured than are the statutory requirements, the policy provisions will be enforced. In any event, the insured is not in a position to accept standard provisions in his or her favor and reject those which are unfavorable to him or her.

(Footnotes omitted.)

**38.** *Great Lakes Container Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 727 F.2d 30, 32 (1st Cir.1984) (holding that insurer's failure to follow statute requiring policies be approved by insurance commissioner did not void policy); *Resolution Trust Corp. v. Hedden*, 879 F.Supp. 600, 602–03 (N.D.Miss.1995) (insurer's failure to submit exclusion for approval did not invalidate exclusion); *Gary v. Am. Cas. Co. of Reading, Pa.*, 753 F.Supp. 1547, 1551 (W.D.Okla.1990) (holding that failure to file endorsement does not render it void); *Cage v. Litchfield*, 45 Conn.Supp. 298, 713 A.2d 281, 289 (1997) (holding that endorsement not filed with commissioner was valid and that "the imposition of a monetary fine or a penalty other than voidance is sufficient to protect the efficacy of [filing statute]"); *Home Indem. Co. v. Hoechst Celanese Corp.*, 128

here is not that the insurer failed to obtain preapproval, but that its limiting provision did not "conform with" Notice A. Grant Aviation cites only two cases that mention statutes providing for the validity of noncomplying forms.[39]

Those two cases—*Highlands Insurance v. American Marine Corp.* and *Williams v. Metropolitan Life Insurance Co.*—are inapposite. The courts there cited "validity of noncomplying forms" statutes in rejecting *insureds'* attempts to void otherwise valid policy forms merely because insurers failed to file and obtain approval for the policy forms.[40]

■ Our case does not concern an insurer's failure to file or obtain approval for an otherwise valid policy. It involves an insurer's failure to comply with a regulation promulgated for the purpose of giving insureds adequate notice of potential attorney's fees liability. The division adopted 3 AAC 26.500–.550 and Notice A because it found that inadequate disclosure constituted an unfair or deceptive trade act. Grant Aviation cites no cases in which a court has held that a provision that materially deviates from the insurance code and that restricts or excludes coverage is effective under a "validity of noncomplying forms" statute.

There are other reasons not to apply AS 21.42.220 to validate Endorsement 8. First, applying the statute as Grant Aviation proposes would effectively deprive the Division of Insurance of authority to prevent nonconforming provisions from becoming effective. On its face, Grant Aviation's reading of the statute would validate provisions that depart from any minimum requirements that the division, in legitimate exercise of its expertise, might require. This would be an unusu-

al result given the extensive regulation of the insurance industry and the regular practice of states requiring insurance policies to include particular provisions or model forms.

Second, Grant Aviation's reading of the statute would undermine the regulation's critical purpose—to give insureds adequate notice of a provision limiting coverage. Reading the noncomplying form as though it does give the insured the required notice would defeat the division's purpose in promulgating the notice regulation and model form. Applied as Grant Aviation proposes, AS 21.42.220 would validate endorsements limiting Rule 82 coverage notwithstanding a complete failure to satisfy the regulation.

We decline to read AS 21.42.220 to uphold a defective provision that attempts to limit coverage. We will therefore not apply it to save Endorsement 8.

### E. The Division of Insurance Had Authority To Promulgate 3 AAC 26.510.

Grant Aviation also asserts that 3 AAC 26.510 is invalid because the Division of Insurance did not have authority to promulgate that regulation. That regulation applies to insurance policies with duty-to-defend provisions. It provides in relevant part that "a policy under which an insurer has a right or duty to provide a defense for an insured must provide coverage for the payment of attorney fees taxable as costs against the insured under Alaska Rule of Civil Procedure 82." The regulation further requires an insurance carrier to cover additional attorney's fees.[41]

The division cited several statutes from Title 21 as its authority for promulgating 3

N.C.App. 226, 494 S.E.2d 768, 773 (1998) (holding that insurer's failure to get form approval for pollution exclusions did not void exclusions because, among other reasons, statute that provides for penalties for insurers does not mention voiding policy as remedy).

**39.** *See Highlands Ins. v. Am. Marine Corp.*, 607 F.2d 1101, 1104 (5th Cir.1979) (holding that insureds could not avoid paying premiums due under policy by claiming that insurer's failure to file policy made it void); *Williams v. Metro. Life Ins. Co.*, 10 Wash.App. 600, 519 P.2d 1310, 1313

n. 2 (1974) (holding that insured's beneficiary could not collect on life insurance policy because policy never became effective because insured misrepresented his health on application form, even though application amendment slightly differed from form approved by insurance commissioner).

**40.** *See Highlands*, 607 F.2d at 1104; *Williams*, 519 P.2d at 1313 n. 2.

**41.** 3 AAC 26.510.

AAC 26.510.[42] Title 21 deals with insurance generally. Grant Aviation claims that the Title 21 statutes cited as authority for 3 AAC 26.510 only "govern matters of procedure, not substance." Grant Aviation further contends that Title 2 of the Alaska Statutes contains the provisions that regulate the aviation industry.

Grant Aviation directs us to no provision in Title 2 that expressly or impliedly makes 3 AAC 26.510 inapplicable to air carriers. Title 21 gives the director authority to "adopt reasonable regulations" to effectuate the purposes of the title.[43] And 3 AAC 26.510 represents a justifiable exercise of the director's authority. One section in Title 2, which governs aeronautics, specifies minimum insurance limits for air carriers, but it does not purport to render Title 21 altogether inapplicable to insurance for air carriers.[44] It does not address coverage for attorney's fees. Nothing Grant Aviation has argued would justify a conclusion that the Director of Insurance had no authority to promulgate 3 AAC 26.510.

## IV. CONCLUSION

Because we conclude that Endorsement 8 does not "conform with" the model form and thus violates 3 AAC 26.550 and because AS 21.42.220 does not save the endorsement, we REVERSE the judgment and REMAND for calculation of the attorney's fees recoverable under the policy.

---

**42.** The division cited AS 21.06.090; AS 21.36.150; AS 21.42.120, .130, and .160 as authority for 3 AAC 26.510. *See* 3 AAC 26.510.

**43.** *See* AS 21.06.090.

**44.** *See* AS 02.40.010(a).